TEXAS & N. O. R. CO. v. HARRINGTON et al. (No. 391.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 14, 1919. On Motions for Rehearing and Additional Findings of Fact, March 13, 1919.)

1. RAILROADS ⬳350(13)—DEATH AT CROSSING—NEGLIGENCE—QUESTION FOR JURY.

In action for death at railroad crossing of one driving automobile, issue of negligence on part of deceased *held* of fact for the jury under the evidence.

2. RAILROADS ⬳350(32)—DEATH AT CROSSING—OBSCURATION OF CROSSING—QUESTION FOR JURY.

In action for death at railroad crossing of one driving automobile, whether or not crossing was obscured either wholly or partially *held* a question of fact for the jury, under the evidence, so that on such proposition the court was not authorized to take the issue of proximate cause from the jury.

3. TRIAL ⬳234(2)—INSTRUCTION—CONTRIBUTORY NEGLIGENCE—GROUPING FACTS.

Where defendant railroad pleaded contributory negligence on the part of decedent killed at a crossing while driving an automobile, under the plea, on request, the trial court should have grouped the facts, if any, constituting contributory negligence, and have submitted them to the jury.

4. RAILROADS ⬳351(16)—DEATH AT CROSSING—INSTRUCTION.

In action against railroad for death at crossing of one driving automobile, court should have instructed on railroad's request that if decedent approached crossing without looking or listening, and if, by so doing, he would have seen or heard train in time, and if a man of ordinary prudence would have looked or listened, jury should find decedent was guilty of contributory negligence proximately causing his death.

5. TRIAL ⬳253(4)—INSTRUCTIONS—IGNORING ISSUES.

In action against railroad for death at crossing of one driving automobile, giving of defendant's requested special charge on contributory negligence as proximate cause of injury, which ignored issues of discovered peril and inability to exercise ordinary care because of terror, was not erroneous, where such issues were not pleaded in answer to plea of contributory negligence.

6. RAILROADS ⬳351(15)—DEATH AT CROSSING—INSTRUCTION.

In action against railroad for death at crossing of one driving automobile, court should have submitted issue of negligence in approaching an obscured crossing at more than six miles an hour, in language of Acts 35th Leg. c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*).

7. RAILROADS ⬳328(5)—INJURY AT CROSSING—STATUTE—"OBSCURED."

View of railroad crossing is "obscured," within meaning of Acts 35th Leg. c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*), requiring one approaching such a crossing in a motor vehicle to proceed at not more than six miles an hour, etc., when one approaching is not able to see train at sufficient distance to enable him to take necessary steps for his safety.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obscure.]

8. TRIAL ⬳232(5)—INSTRUCTIONS—DEFINITION OF STATUTORY EXPRESSION.

In action against railroad for death at crossing of one driving automobile, on plaintiff's request, court should have defined "crossing," and "view of the crossing," as used in Acts 35th Leg. c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*), prohibiting approach in motor vehicle to obscured crossing at more than six miles an hour, so that jury could have applied facts.

9. RAILROADS ⬳335(5)—DEATH AT CROSSING—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.

If one is guilty of negligence in attempting to cross a railroad, and is killed by an approaching train, the negligence is the proximate cause of the death.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. RAILROADS ☞351(20)—DEATH AT CROSSING—INSTRUCTION—CONTRIBUTORY NEGLIGENCE AND PROXIMATE CAUSE.**

In action against railroad for death at crossing of one driving automobile, special charge on contributory negligence and proximate cause requested by defendant *held* properly refused, facts grouped therein not necessarily being proximate cause of accident.

**11. RAILROADS ☞351(7)—DEATH AT CROSSING — NEGLIGENCE — FAILURE TO STATION FLAGMAN.**

In action against railroad for death at crossing of one driving automobile, where it was customary to run trains at from 15 to 35 miles an hour at such crossing, which was one of the most used streets, refusal to defendant of charge that jury could not find negligence because of failure to have flagman at crossing was not error.

On Motions for Rehearing and Additional Findings of Fact.

**12. TRIAL ☞347 — PROVISION FOR SPECIAL VERDICTS—INTENT OF LEGISLATURE.**

It was not the purpose of the Legislature, in providing for special verdicts, to deprive litigants of any substantial and valuable right necessary for the protection of their interests, as the same existed before the passage of the act.

Appeal from District Court, Orange County; W. T. Davis, Judge.

Suit by Alice Harrington and others against the Texas & New Orleans Railroad Company. From judgment for plaintiffs, defendant appeals. Reversed and remanded.

Orgain, Butler, Bolinger & Carroll, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

Holland & Holland and J. T. Adams, all of Orange, for appellees.

WALKER, J. As the statement of this case made by the appellant is not contested by appellees, we here copy same from appellant's brief:

"This suit was filed upon the 5th day of October, A. D. 1917, in Orange county district court, by Alice Harrington, in her own behalf and for the benefit of her four minor children, and Robert Harrington, father of the deceased.

"Plaintiff alleged that on or about October 1, 1917, defendant below was the owner and operator of a railroad through Orange county, and through the incorporated town of Orange, over which it ran cars and trains, and that on said 1st day of October, 1917, there was a street in the town of Orange known as Park street, which was a public street open to the public, and used for ordinary purposes of travel, being a public thoroughfare, and that on said date Claude Harrington, the husband of plaintiff and the father of the minor children and son of Robert Harrington, were passing along said street in an automobile, when the automobile was struck by a passing passenger train, owned and operated by the defendant, with the result that the said Claude Harrington received injuries which caused his death; that at said time Harrington was in good health, thirty-one years of age, and was earning $75 per month.

"Said petition further alleged that the defendant was guilty of negligence in the operation of its train at said time and place, and its negligence was the proximate cause of the collision and the death of the deceased. The grounds of negligence alleged against the defendant were as follows:

"(1) The failure of the train to blow any whistle or ring any bell of the locomotive in approaching said crossing.

"(2) The failure of the agents, servants, and employés of said defendant in the operation of said train to keep a proper lookout for persons traveling said street, or about to cross said railroad crossing.

"(3) The failure to provide any means of warning to travelers using said street, such as gates, bells, or flagman.

"That the train was running at an excessive rate of speed, and at a rate of speed prohibited by the city ordinances of the city of Orange, which ordinance prohibited the running of trains at more than six miles an hour.

"Plaintiffs sought to recover the sum of forty thousand ($40,000.00) dollars.

"Defendant answered by general demurrer, special exception, general denial, a plea of contributory negligence upon the part of the deceased, and inevitable accident.

"A trial on special issues before a jury resulted in a judgment in favor of the plaintiffs. Alice Harrington for $15,000.00; Ruby Harrington, $5,000.00; Viola Harrington, $5,000.00; Rosalie Harrington, $5,000.00; Edna Harrington, $5,000.00; and Robert Harrington, nothing—or a total of $35,000.00."

In answering special issues, the jury found that the train that killed Claude Harrington did not blow the whistle or ring the bell as it approached the crossing; second, that it was running at an excessive rate of speed; third, that it was traveling at the rate of 35 miles an hour when it struck deceased; fourth, that it did not maintain gates, bells, or a flagman at the crossing; fifth, that the acts and omissions of the railroad company were the proximate cause of the death of Claude Harrington.

Question No. 6, propounded to the jury, was as follows:

"Do you believe from the evidence that the deceased, Claude Harrington, did any act or failed to do any act that contributed to the injury causing his death?"

To this question the jury answered, "No." Question No. 7 was:

"Did any act or omission of the deceased, Claude Harrington, which immediately preceded the injury that resulted in his death, amount to 'negligence' on his part, as that term has been defined to you in this charge?"

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

To this question the jury answered, "No." Question No. 8 was:

"Do you believe from the evidence that such act or omission on the part of the said Claude Harrington was the proximate cause of the injuries received by him?"

To this question the jury did not answer.

It appears from the facts in this case that deceased was about 31 years old; that he was a man of quiet, sedate habits, not a drinking man, not a man given to sports, but attentive to his own business in a quiet and orderly manner. On the morning of the tragedy he was seen by several parties just before he reached the crossing where he was killed, a block and a half or two blocks away, the testimony being that these blocks were 300 or 400 feet long; that he was traveling in an automobile with a companion, going towards the crossing at a speed variously estimated from 8 to 15 miles per hour. None of these parties saw anything improper in his conduct, but, on the contrary, testified that he was giving his attention to his car. E. Dorsey testified for the defendant as follows:

"I kept my eye on the car until the train struck it. * * * To my knowledge the man that was in the car, running the car, when they got just up to the spur they cut the exhaust, and it is my idea if they had kept on they could have escaped. As the car went dead, she went dead right middleway of the track; before they could make it over the train struck her. * * * There were two men in the automobile at the time I saw them; they were running along in the ordinary way, just like anybody else. * * * They were riding along in an ordinary way. * * * I didn't see the men doing any playing, that were driving the car. If they had been fighting each other in the car I could have seen the hats flying from one to the other. * * * I don't undertake to say they were not fighting; I didn't see them."

John E. Stewart testified for defendant as follows:

"That he watched the occupants of the automobile as the car approached the crossing. As said automobile approached the crossing neither of the occupants of said car was looking for the approach of a train. The occupants of said car were playing with one, another, I judged. One had slapped the other one's hat off, and while he who had lost his hat was reaching back in the car for it, the other man who was driving the car was watching the man who was after his hat, and they were both laughing. That they were about 150 feet from the track when he first noticed their playful conduct, and they continued it until they were 12 or 15 feet from the track. That he shouted at the occupants of the automobile and waived his hand to call their attention to the approach of the train; that the automobile was 40 or 50 feet, in his judgment, from the track, at the time he attempted to flag the car. One of them was trying to get his hat, which had been knocked off, and the other one, the driver, was watch-ing the man in his effort to recover the hat. The occupants of the automobile never looked for the approach of a train, but after the front wheels of the automobile passed over the east rail of the passing track, and were about eight or ten feet from the track upon which the passenger train was running, they then looked up and saw the passenger train right on them."

The finding of the jury that the train was traveling at the rate of 35 miles an hour at the time it struck the automobile is amply warranted by the testimony. This is a speed in excess of 51 feet a second. Under the facts as reviewed by appellant, the train could have been seen by the deceased at a distance of only 500 feet from the crossing. It took the train less than ten seconds to cover this space. There is abundant testimony in the record to warrant the jury in believing that the train could not have been seen more than 350 feet from the crossing, a distance which the train would have traveled in less than seven seconds.

Appellant complains of the refusal of the court to instruct a verdict in its behalf, and also the refusal of the court to give the special charges as shown in their ninth, tenth, and eleventh assignments of error, which charges are as follows:

Ninth assignment:

"You are instructed that if you believe from the evidence that said Claude Harrington approached said crossing on the occasion of his death without looking or listening for the approach of a train and you further believe from the evidence that by looking or listening he would have seen or heard said train in time to have prevented his injury and death, and you further believe that a man of ordinary prudence would, under the same or similar circumstances, have looked or listened for the approach of a train, then you are instructed to answer questions Nos. 6, 7, and 8 'yes,' and this would be true even though you may believe from the evidence that there were no whistles or other signals given to announce the approach of the train, and that the train was being operated in a negligent manner."

Tenth assignment:

"You are instructed that if you believe from the evidence that the view of an approaching train to one going along Park street and about to cross the railroad track was in any wise obstructed, and such an obstruction would make it more difficult to see the approach of a train, and if you further believe that a man of ordinary prudence, situated as the deceased was at the time, would have stopped at a time and place sufficiently near the railroad to discover the approach of the train in time to have prevented the injury, then you are instructed to answer questions Nos. 6, 7, and 8 'Yes.' "

Eleventh assignment:

"You are instructed that if you believe from the evidence that the view of the crossing and the approaching train were either wholly or partially obstructed, and you further believe that the deceased did not reduce the speed of

his automobile to six miles an hour or less at a point not nearer than 30 feet from said track, and that such failure was the proximate cause of his death, you will answer questions Nos. 6, 7, and 8 'Yes,' and this would be true even though you believe from the evidence that no signals were given announcing the approach of the train, and that the train was being otherwise operated in a negligent manner."

Appellant insists that its peremptory instruction should have been given for two reasons: First, because, under its general allegation of negligence, the undisputed facts showed that deceased, Claude Harrington, was guilty of contributory negligence; and, second, that the undisputed facts showed that deceased had violated section 17, c. 207, General Laws of Texas, 35th Legislature (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*), and was therefore guilty of negligence.

[1] We cannot sustain either of these contentions. As to the first, under all the facts of this case, the issue of negligence on the part of deceased was an issue of fact to be decided by the jury.

[2] As to the second contention, the condition of the crossing, and the distance an approaching train could have been seen by one approaching the crossing, were fully gone into, and whether or not this crossing was "obscured," either wholly or partially, was a question of fact for the jury, and on this proposition the court was not authorized to take from the jury the issue of proximate cause.

[3] In this case the defendant pleaded contributory negligence on the part of the deceased, Claude Harrington. Under this plea, when requested so to do, the trial court should have grouped the facts, if any, constituting contributory negligence on the part of the deceased, and submitted the same to the jury. Western Union Telegraph Co. v. Jeanes, 88 Tex. 230, 31 S. W. 186.

In Railway v. Mangham, 95 Tex. 413, 67 S. W. 765, the very point was certified by the Fifth Court of Civil Appeals, the statement relating to the issue in question being as follows:

"The defendant pleaded merely: (1) A general denial. (2) A general plea of contributory negligence. The plea fails to set forth any acts of contributory negligence on the part of the plaintiff, but simply pleads that 'plaintiff's injury was caused by lack of care and contributory negligence, under the circumstances of the case, in getting upon, or attempting to get upon, the engine of defendant, which defendant pleads in bar of plaintiff's cause of action.' (3) And the general plea that plaintiff assumed the risk of said defective step.

"There was evidence tending to support the issues presented by the pleas of the respective parties.

"1. The appellant asked a special charge on contributory negligence in which the facts were grouped and the law applied thereto. This charge was refused, and error is here assigned therefor.

"The court's charge on contributory negligence was in general terms, but as full as defendant's plea, and correct as far as it went.

"Question: Where the facts in evidence relied on by the defendant to constitute contributory negligence are not specifically pleaded, and the court fails to group the facts, but charges in general terms on contributory negligence, is the defendant entitled to have given a special charge grouping the facts and applying the law thereto?"

In answering the question, the Supreme Court, on page 418 of 95 Tex., on page 766 of 67 S. W., says:

"Answer to the first question: If the facts grouped in the appellant's charge were admissible under the plea of contributory negligence, and the charge was correct, it should have been given.

"A defendant may plead contributory negligence in general terms, and, if not excepted to, the plea will authorize the introduction of testimony to establish the fact of negligence. Telegraph Co. v. Jeanes, 88 Tex. 230 [31 S. W. 186]. The pleadings furnish the standard by which the court determines the admissibility of evidence, but it is the duty of the court to instruct 'the jury as to the law arising on the facts.' Rev. Stats. art. 1317."

The court's main charge to the jury failed to do this. The defendant sought to have grouped and submitted to the jury the facts constituting its defense, with instructions from the court to the jury as to how to answer questions 6, 7, and 8.

[4] Appellees insist that the court properly refused these requested charges, because they take from the jury the issue of proximate cause, and cite as supporting this position Wells Fargo & Co. v. Benjamin, 107 Tex. 331, 179 S. W. 515; G., C. & S. F. Ry. Co. v. Mangham, 29 Tex. Civ. App. 486, 69 S. W. 80; G., C. & S. F. Ry. Co. v. Shieder, 88 Tex. 166, 30 S. W. 902, 28 L. R. A. 538.

In the Benjamin Case the plaintiff was injured by a box falling from an express truck, the ground of negligence being:

"That the plaintiff in error negligently loaded said truck so as to permit and cause the box or crate to fall from the same; the other, that the plaintiff in error, its agents, servants, and employés, negligently handled and operated and managed said truck in such manner and way as to cause the said box or crate to fall from the truck and strike the plaintiff."

The defendant requested three special charges, as follows:

(1) "You are instructed that if you find from the evidence that the plaintiff was walking or standing by the moving truck at the time he was struck, and that a person of ordinary care, under the same circumstances, would not have walked or stood by it, you will find for the defendant, regardless of whether or not you find that one or more of the employés of the defendant was guilty of negligence in loading the truck or handling it."

(2) "If you find from the evidence that a person of ordinary care, under the same circum-

stances, would have avoided walking or standing in such close proximity to the truck that a crate or box falling therefrom would strike him, you will find for the defendant."

(3) "If you find from the evidence that the plaintiff failed to see the approaching truck, with the load thereon, or that he saw the said truck and its load, but took no notice of it, but you further find that a person of ordinary care, situated as the plaintiff was when the truck was approaching him, would have seen the said loaded truck, and would have avoided walking or standing in such close proximity to it as to be struck by a falling crate or box, you will find for the defendant regardless of whether or not any of its employés were guilty of negligence."

Judge Yantis decided that the court did not err in refusing these charges, because they took from the jury the issue of proximate cause, saying:

"There would be no warrant for a charge in which the court withdrew from the jury a question of fact, and settled it conclusively as a matter of law, unless the facts were such that all reasonable minds would agree, and none differ on the subject. We hardly think it could be said that, under the facts and circumstances of this case, all reasonable minds would agree that, if Benjamin was guilty of negligence by being near the truck, such negligence proximately contributed to his injuries."

In discussing proximate cause he says:

"One's act is only a proximate cause of an injury when it could have been reasonably anticipated by him that some such injury would result from such act. Now, who should determine, the court or the jury, whether it was in contemplation of Benjamin that if he stood near the truck he would probably be injured? Plainly it is a question of fact, to be determined from the evidence introduced, and, being a question of fact, it was a jury question, and the trial court would have no authority in law to decide it."

In G., C. & S. F. Ry. Co. v. Mangham, supra, the plaintiff recovered damages for injuries suffered by him in attempting to board an engine of appellant. The court charged the jury as follows:

"It was the duty of plaintiff, when he attempted to board the engine after throwing the switch, to use such care and caution as an ordinarily prudent person would have exercised under like circumstances; and if he failed to do so he would be guilty of contributory negligence, and could not recover, although you believe from the evidence that the defendant was guilty of negligence as explained in the general charge."

The appellant asked that the following special charge be given:

"You are instructed that the plaintiff, in performing his duties, was required to exercise such care as an ordinarily prudent man would have exercised under like circumstances. If you believe from the evidence that, considering the time of the day, the state of the weather, the fact that the train was moving, and escaping steam obscuring or tending to obscure his vision, an ordinarily prudent man would not have attempted to get on said engine, and that the act of plaintiff in attempting to get on said engine was, under all the circumstances of the case, negligence, then, if you so believe, you will find for the defendant."

The court held that the refusal of this special charge was not error, because the charge did not require the jury to find that such negligence contributed to the injury. This decision is cited by Judge Yantis in support of his decision in the Benjamin Case, supra. The facts grouped in this special charge refused by the court would not, as matter of law, make the plaintiff guilty of contributory negligence.

In Ry. Co. v. Shieder, supra, the following special charge was requested by appellant:

"It was the duty of plaintiff's wife to look for an approaching train when about to go upon the railroad; and, if her view was in any way obstructed while approaching said crossing, it was her duty to look for a train as soon as she had reached a point where she passed such obstructions and a view of the track was open to her; and if you believe from the evidence that she failed to look for a train as soon as she could have seen the same, and that a failure to do so was a failure to exercise such care as a reasonably prudent person would have used under the circumstances, and that such failure contributed to the injuries received, you will find for the defendant."

In discussing this charge the court said:

"The latter part of the charge, reading, 'if you believe from the evidence,' etc., states a correct principle of law, and should have been given, if asked alone. It left to the jury the question as to whether, upon the whole evidence, she failed to look, and whether, under all the circumstances, such failure was negligence."

As we construe the special charge set out in appellant's ninth assignment of error, it is in direct harmony with the rule announced in the Shieder Case, supra.

Applying Judge Yantis' definition of proximate cause, as above given, in Wells Fargo v. Benjamin, supra, to wit, "One's act is only a proximate cause of an injury when it could have been reasonably anticipated by him that some such injury would result from such act," to the special charge complained of in the ninth assignment, makes this charge a proper and necessary charge to be given to the jury, when requested by defendant, and relieves it of appellee's criticism. Standing by an express truck is not a place of inherent danger. A railroad crossing is. Reasonable minds cannot differ as to the danger of crossing in front of an approaching train. This charge properly submits the issue of proximate cause, and an affirmative finding on the facts grouped therein would defeat plaintiff's cause of action. G., H. & S. A. v. Bracken, 59 Tex. 74; G., H. & S. A. v. Kutac, 72 Tex. 643, 11 S. W. 127; Railway Co. v. Edwards, 100 Tex. 22, 93 S. W. 106; T. & P. v. Fuller, 5 Tex. Civ. App. 660, 24 S. W.

209 S.W.—44

1090; Ft. W. & D. C. v. Hart, 178 S. W. 795; Southern Traction Co. v. Kirksey, 181 S. W. 545; M., K. & T. v. Trochta, 181 S. W. 764; St. L. &. B. M. Ry. Co. v. Paine, 188 S. W. 1034; Baker v. Collins, 199 S. W. 520; Ry. Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1111; Railway Co. v. Dean, 76 Tex. 73, 13 S. W. 45; St. L. & S. W. Ry. Co. v. Branom, 73 S. W. 1064; Texas Midland v. Wiggins, 161 S. W. 445; Teetz v. I. & G. N., 162 S. W. 1000; Lyon v. Phillips, 196 S. W. 995; Railway Co. v. Harrell, 194 S. W. 971; Railway Co. v. Breadow, 90 Tex. 26, 36 S. W. 410; Railway Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Southern Trac. Co. v. Wilson, 187 S. W. 538.

In I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, Judge Williams said:

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence. This is the precise attitude of the plaintiff, when he claims that he was not bound to look out for himself until the statutory signals were given. His claim cannot be admitted without denying the rule which exacted the duty of due care on his part, a duty as binding on him as was the duty of giving signals binding on the defendant. The case is easily distinguished from those in which this court has held that, under the facts thereof, it would have been improper for the courts to have instructed that it was the duty of the travelers to do any particular thing as a measure of due care, such as to look and listen, it being the function of the jury to say what precautions were called for by the particular situation. Those cases presented issues for the jury to determine as to whether or not the care was sufficient, and not bare facts, like those in this case, establishing that no care whatever was taken, and offering no excuse for its absence except a reliance on the other party. In one of those cases this court took occasion to say, with reference to charging the jury: 'The rule given as to degree of care required of deceased is recognized by former decisions of this court. [Houston & G. N. R. Co. v. Randall] 50 Tex. 254; [Houston & T. C. Ry. Co. v. Cowser] 57 Tex. 302; [Houston & T. C. Ry. Co. v. Waller] 56 Tex. 334; [Tex. & P. Ry. Co. v. Murphy] 46 Tex. 356 [26 Am. Rep. 272]; [Eames v. Texas & N. O. Ry. Co.] 63 Tex. 660. * * *'

"While persons using a railway crossing have the right to expect that the law requiring signals will be obeyed, this is not a substitute for the duty of exercising care for themselves, and they are not excused from that duty by the fault of the other party. No case in this court has allowed a recovery upon facts such as these, and the judgment cannot be permitted to stand without abolishing the rule, recognized by all authority, requiring the exercise of ordinary prudence on the part of persons crossing railroad tracks."

In G., H. & S. A. Ry. Co. v. Kutac, 72 Tex. 643, 11 S. W. 127, the Supreme Court said:

"Ordinarily the fact that the customary signals were not made does not relieve a person approaching an open crossing from the duty of keeping a proper lookout on approaching the road. And where a person knowingly about to cross a railroad track may have an unobstructed view of the railroad so as to know of the approach of a train a sufficient time to clearly avoid any injury, he cannot recover as a matter of law, although the company may have been negligent or neglected to perform a statutory requirement. I. & G. N. R. R. v. Graves, 59 Tex. 331."

In T. & P. Ry. Co. v. Fuller, 5 Tex. Civ. App. 660, 24 S. W. 1090, Chief Justice Lightfoot said:

"The rule is well settled in this state that, even if the defendant was guilty of negligence in failing to give the proper signals, and in running at a greater rate of speed than was allowed by law, yet if the plaintiff attempted to cross the track at a place where she could have seen the engine in time to have avoided the danger by looking, and failed to do so, she was guilty of contributory negligence, and cannot recover."

In Ft. W. & D. C. Ry. Co. v. Hart, 178 S. W. 795, Judge Hendricks, speaking for the court, said:

"We think, where the view is unobstructed, it was contributory negligence for this driver to run his auto into a moving train, whether he looked or did not look, upon all the facts presented in this record conclusively showing that the cars were moving at a time when he should have seen them in action, and that it would be the trial court's duty to so instruct the jury upon another submission upon the facts. I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106; Railway Co. v. Bracken, 59 Tex. 74; Boyd v. Railway Co., 101 Tex. 411, 108 S. W. 813."

In Southern Traction Co. v. Kirksey, 181 S. W. 545, the court said:

"Appellant asserts that the evidence is insufficient to support the verdict, in that it fails to show negligence on the part of the railway company, and likewise shows contributory negligence on the part of the deceased. We agree with appellant in this last contention. From all the facts and circumstances in evidence we are impressed with the belief that the deceased either saw, or by the use of ordinary diligence could have seen, the approaching train. He did not stop, but kept steadily driving after passing Deloach. If he had stopped, looked, or listened he would have heard or seen the train, because Deloach testified that by a glance in a northward direction he could have seen the approaching train. Deceased was familiar with the highway, its publicity, and the frequency of the passing of trains thereover. He must have known the danger necessarily incident to an attempt to cross the track without looking or listening. If he saw or heard the train he must have been impressed with the belief that he could cross ahead of it. The evidence clearly shows that, instead of the train's running into the auto, the deceased ran into the train. At any rate, we think the facts show that the deceased was

guilty of contributory negligence as matter of law, for which reason appellee ought not to recover."

In St. Louis, B. & M. Ry. Co. v. Paine, 188 S. W. 1033, the court said:

"The courts say that the general rule is that negligence is a question of fact for the jury, but the courts can and do declare some acts to be so obviously dangerous and reckless as to constitute negligence per se. The facts show clearly that the driver of this automobile neither looked nor listened for the train which struck him, nor did he pay any attention to the warning indisputably given him, but ran his car upon the track immediately behind the receding train, when its rear end had gone 40 or 50 feet, not more than two car lengths from him, without in any way trying to ascertain whether there was another train to pass immediately in the other direction, and such acts upon his part constitute such negligence as to preclude a recovery in this action."

In Baker v. Collins, 199 S. W. 519, the court said:

"The undisputed proof shows that Collins drove his automobile upon the intersection of two roads, when, if he was not guilty of negligence, he must have seen the headlight, and known that the train was approaching the crossing, and that it was dangerous for him to attempt to cross in front of it. This being the case, the negligence of the deceased will bar any right of the plaintiffs to recover, unless the case comes within that class of cases where it is held that when the negligence of the defendant has caused the injured party to place himself in such a perilous situation as produces that degree of mental terror which incapacitates the injured party from acting as he otherwise would act, in which event the defense of contributory negligence is held not to apply.".

[5] It is true that the special charge in the ninth bill of exception ignores the issue of discovered peril, and inability to exercise ordinary care, because of terror, as stated in the opinion last above cited, but appellees did not plead these issues in answer to appellant's plea of contributory negligence.

[6-8] The special charge complained of in the eleventh assignment of error, as above copied, calls for a construction of section 17, c. 207, Acts of the 35th Legislature, which is as follows:

"Any person driving a motor vehicle or motorcycle, when approaching the intersection of a public street or highway with the tracks of a steam railroad or interurban railroad, where such street or highway crosses such track or tracks at grade, and where the view of the said crossing is obscured, either wholly or partially, shall before attempting to make the said crossing, and at some point not nearer than thirty feet of the said track, reduce the speed of his motor vehicle or motorcycle to a speed not to exceed six miles per hour before making the said crossing, unless there are flagmen or gates at such crossing and such flagmen or gates show that the way is clear and safe to cross such track or tracks, and provided further that the provision of this section shall not apply to persons crossing interurban or street railway tracks within the limits of incorporated cities or towns within the state."

Since the common use of the automobile, accidents at railroad crossings are of frequent occurrence. It is known to every one that an approaching train, at many of these crossings, cannot be seen until it is very close to the actual crossing. Evidently the Legislature had in mind this condition when this section was passed. To hold, as contended by appellees, that "view of the crossing" refers only to that portion of the railroad bed and track actually used by the public in crossing, would write out of this article all practical meaning. "View of the crossing," as used in this article, means that portion of the railroad track to the front and to the right and left, within the view of one approaching the track. The view of the crossing is "obscured," within the meaning of this article, when one approaching the track is not able to see an approaching train at a sufficient distance to enable him, in the exercise of ordinary care, to take the necessary steps for his safety.

The defendant requested the court to submit this issue of negligence, using practically the words of the statute, which charge should have been given. Had appellees so requested, the trial court should have defined "crossing" and "view of the crossing," so the jury could have applied the facts to such definition.

[9] We think, as is done by this charge, the court should require the jury to find that such negligence, arising from a violation of this statute, was the proximate cause of the death of Claude Harrington.

Under the authorities above cited, and the facts stated therein, if one is guilty of negligence in attempting to cross a railroad, and is killed by an approaching train, such negligence is a proximate cause of his death. But we are not prepared to hold that negligence per se in failing to observe the provisions of section 17, c. 207, Acts of the 35th Legislature, constitutes a proximate cause, but, as required by this special charge, the issue of proximate cause as to this issue in this case should be submitted to the jury.

[10] The special charge in the tenth assignment was properly refused, because the facts therein grouped would not, as a matter of law, necessarily be the proximate cause of the accident.

[11] By appellant's third assignment of error, complaint is made of the refusal of the court to give the following charge:

"You are instructed that you cannot find the defendant guilty of negligence because of its failure to have a flagman at said crossing or gates or bells thereat."

In answering questions 1 and 4 the jury found that the whistle was not blown and

the bell was not rung as the train approached the crossing, and they further found that the defendant did not maintain gates, bells, or a flagman at this crossing. In answering question No. 2, the jury found that the train was traveling at an excessive rate of speed when it struck Claude Harrington. In answering question No. 5, the jury found that the failure to ring the bell and blow the whistle, and the failure to maintain flagmen, gates, and bells at the crossing, and the excessive rate of speed, were the proximate cause of the death of Claude Harrington. Under the undisputed evidence in this case, Park street is one of the most used streets in the city of Orange. It is graveled or shelled, and is one of the streets that leads out towards the city of Beaumont. It is being used at all times by the public. Numerous passenger trains and freight trains constantly cross over this street. This crossing is not far from the heart of the city. By ordinance, it is unlawful for a train to run at a greater speed than six miles per hour within the corporate limits of Orange. The testimony of the defendant is that this ordinance has never been observed, so far as this crossing is concerned; that the usual rate of speed in crossing Park street is 15 miles an hour, and it ranges from that to 35 miles an hour. The testimony of many witnesses is that, when you are as near as 60 feet of this crossing, a train would have to be within 350 feet of the crossing before you could see it. By its propositions, appellant puts this distance at 500 feet. Under the facts of this case, considering the rate of speed customarily used by the defendant's trains in crossing Park street, the failure to give this instruction was not error. Central T. & N. W. Ry. Co. v. Gibson, 83 S. W. 865; M., K. & T. Ry. Co. v. McGee, 92 Tex. 616, 50 S. W. 1013.

In Central Texas & N. W. Ry. Co. v. Gibson, supra, Justice Talbot used this language:

"It is true that railway companies are not required to have a flagman posted at every crossing to give warning to travelers about to pass over them of the dangers of approaching trains. This duty they owe the public at such crossings only as are, by reason of their location and the circumstances surrounding them, rendered unusually dangerous. In such a case the failure of the railway company to have a flagman at such a crossing becomes a proper and legitimate subject of inquiry, and a question of culpable negligence in determining the liability of the company for damages at the suit of an injured person by collision with its trains or cars in attempting to pass over such crossing."

The rule announced in these two decisions seems to be in direct point and against this assignment.

We have carefully examined all other assignments of error and special charges requested by appellant, and find no error in the action of the court in relation thereto.

For the refusal of the court to give the special charges complained of in the ninth and eleventh assignments of error, this cause is reversed and remanded.

## On Motions for Rehearing and Additional Findings of Fact.

Both parties in this cause have filed motions for rehearing, and in addition thereto the appellant has filed a motion for additional findings of fact.

In our original opinion we said that the issue as to whether or not the crossing was obscured, either wholly or partially, was a question of fact for the jury. As this case is to be reversed, we deem it improper to make a finding that this crossing was obscured, or was not obscured, notwithstanding appellant says it is immaterial to it which way we find. For the same reason, we think it best to express no opinion as to the weight of the testimony on the other findings requested by appellant.

In deference to the two motions for rehearing filed by the parties herein, we have carefully reconsidered our original opinion.

Appellees, in their motion for rehearing, suggest that the special charges should not have been given, because they are, in effect, a general verdict for the defendant, citing under this assignment many authorities.

Worden v. Kroeger, 184 S. W. 584, is more nearly in point than any other case cited. In this case the following special charge was given:

"You are charged that, if you believe from the evidence in this case that the plaintiff had the capacity and opportunity to know and appreciate the dangers in reference to using the machine without a cut-off guide, and if you believe by the exercise of that ordinary circumspection that an ordinarily prudent person would have used in the same circumstances he would have known of the dangers in reference to using the machine without a cut-off guide, and he remained in the service of the defendant and used the machine without a cut-off guide, and was injured by reason thereof, and that the same was dangerous as a matter of law, he assumed the risk, and would not be entitled to recover; and, so believing, you must return verdict in favor of the defendant on the issues submitted to you by the court in reference thereto."

The giving of this charge was held to be error; the court saying:

"It is improper to submit a special charge calling for a general verdict, where the case is submitted upon special issues."

It will be noted that this charge specially directs a verdict for the defendant, if the jury finds affirmatively on the issues submitted in this charge; the charge saying:

"And, so believing, you must return verdict in favor of the defendant on the issues submitted to you by the court in reference thereto."

In this case the jury are not so instructed. These charges advise the jury how to answer questions 6, 7, and 8 if certain facts are found to exist. If this case had been submitted on a general charge, the court would have instructed the jury that the deceased was guilty of contributory negligence, if the facts enumerated in these charges were found to exist.

[12] As stated in our original opinion, the defendant has the right to have grouped and presented to the jury in an affirmative way the facts constituting contributory negligence on the part of the deceased. Our Supreme Court holds that this is a valuable right given by our laws to the defendant. It was not the purpose of the Legislature, in providing for special verdicts, to deprive litigants of any substantial and valuable right necessary for the protection of their interests, as the same existed before the passage of this act. These charges only submit to the jury, in an affirmative way, the issues of contributory negligence and proximate cause, and instruct the jury, in an affirmative way, what facts would constitute contributory negligence and proximate cause on the facts before the jury. We believe the appellant was entitled to these charges.

In reversing this case we are expressing no opinion on appellant's assignment that the verdict for $35,000 is excessive.

The motion of appellant to find additional facts and both motions for rehearing are in all things overruled.