**TEXAS & N. O. R. CO. v. PEARSON.**
(No. 509.)

(Court of Civil Appeals of Texas. Beaumont. July 1, 1920. On Rehearing, Oct. 13, 1920.)

1. Trial ⚖══295(7) — Charge considered as a whole not objectionable as ignoring contributory negligence.

In a crossing accident case, though the jury in previous paragraphs of the charge were directed to find for plaintiff if defendant was guilty of negligence specified, yet as subsequent paragraphs declared there should be no recovery if plaintiff was guilty of contributory negligence, the charge as a whole was not objectionable as allowing recovery despite such contributory negligence.

2. Railroads ⚖══338 — Trainmen, discovering peril of person at crossing, bound only to use reasonable care.

Where a person is discovered in a perilous position at a crossing, the trainmen are only required to use ordinary care in the use of the means at hand consistent with the safety of the train, its crew and passengers, to avoid injury.

3. Railroads ⚖══351(22)—Charge on discovered peril not objectionable.

A charge that it is the duty of the engineer and fireman to use all reasonable means at their command consistent with safety to avoid injury is not objectionable, as requiring more than the use of ordinary care as to a person discovered in a perilous position at a crossing.

4. Railroads ⚖══350(7) — Negligent failure to give signals held question for jury.

Evidence held sufficient to raise the question of the negligence of the operatives of the train, approaching a crossing, in failing to give warning signals by bell or whistle.

5. Railroads ⚖══350(5)—Negligent failure to maintain flagman or gates held question for jury.

Whether a railroad company was negligent in failing to maintain gates or a flagman at a much-traveled and obstructed crossing a short distance outside a large city held a question for the jury.

6. Trial ⚖══234(2)—Defendant entitled to have defense clearly pointed out.

A defendant in case submitted on general charge, is entitled to have the facts constituting his defense grouped, and pointedly and affirmatively submitted to the jury.

7. Railroads ⚖══330(3) — Omission of signals will not excuse traveler's negligence.

While persons using a railway crossing have the right to expect that the law requiring sig-

nals will be obeyed. this will not excuse them for failure to use care.

## 8. Railroads ☞335(5) — Contributory negligence proximate cause of injury.

Where the injury to plaintiff as the result of her negligence in proceeding on a railway crossing could have been anticipated, such negligence, as a matter of law, is the proximate cause.

## 9. Railroads ☞351(16)—Charge on contributory negligence held erroneously refused.

In an action for injuries through the negligent operation of a train running without signals as it approached a crossing not guarded by a flagman or gates, the refusal of the railroad's requested charge to the effect that there could be no recovery if the person injured by listening or looking could have discovered the approach of the train, and the omission to do so was a failure to exercise the care of an ordinarily prudent person under the circumstances, *held* error.

Error from District Court, Liberty County; J. L. Manry, Judge.

Action by Sallie Pearson against the Texas & New Orleans Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

Orgain, Butler, Bolinger & Carroll, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for plaintiff in error.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, and J. P. Rogers, of Mineral Wells, for defendant in error.

WALKER, J. On the 19th day of December, 1916, the plaintiff, Mrs. Sallie Pearson, was seriously injured, and her husband, J. M. Pearson, was killed in a railroad crossing accident at the Englewood crossing on the line of the defendant railway company about 3 miles east of Houston. Her cause of action was grounded upon the following acts of negligence, duly pleaded by her, all of which were submitted to the jury:

(1) That the passenger train which struck the automobile in which plaintiff and her husband were riding was running at an excessive and dangerous rate of speed as it approached the crossing.

(2) That the whistle was not blown and the bell was not rung, as required by law, as the train approached the crossing.

(3) That the defendant, through its servants, failed to exercise ordinary care to keep a lookout for persons who might be near the crossing.

(4) That the crossing was extrahazardous and dangerous, and that the defendant negligently failed to maintain a watchman or flagman or gates or bells at the crossing.

(5) The issue of "discovered peril."

The defendant specially pleaded contributory negligence on the part of plaintiff and her deceased husband. This issue was also submitted to the jury.

[1] In the order given above, the different grounds of negligence, except "discovered peril," were submitted to the jury in the thirteenth, fourteenth, fifteenth and sixteenth paragraphs of the court's charge. Each of these paragraphs instructed the jury to return a verdict for plaintiff if they found the defendant guilty of negligence on the issue so submitted, and that such negligence was the proximate cause of plaintiff's injuries and the death of her husband. In the seventeenth paragraph they were thus instructed:

"Or if you find from a preponderance of the evidence that the defendant was guilty of negligence in any two or more of the respects and particular above submitted to you in paragraphs 13, 14, 15, and 16 of this charge, and you further find from a preponderance of the evidence that such negligence, if any, in any two or more of such respects or particulars collectively and combined, was the proximate cause of the injuries of plaintiff, if any, or the death of her husband, J. M. Pearson, you will also return a verdict for plaintiff."

In the eighteenth paragraph they were told to return a verdict for the defendant if they did not believe that it was guilty of negligence on the issues submitted in the preceding paragraphs. This eighteenth paragraph began as follows:

"On the other hand, if you do not believe from a preponderance of the evidence that the west-bound passenger train which ran into the automobile in which plaintiff and her said husband were riding," etc.

The issue of contributory negligence was submitted in the nineteenth paragraph as follows:

"And, further, you are charged that if you find from a preponderance of the evidence that the plaintiff, Mrs. Sallie Pearson, was guilty of contributory negligence in going upon the railroad track at the public road crossing where the train struck the automobile in which she was riding, at the time and in the manner in which she did go upon such crossing while traveling along said public roadway, then you will return a verdict in favor of the defendant."

Appellant objected to the manner of submitting these issues:

"Because it permits a recovery upon the part of the plaintiff, if the jury finds the facts therein stated to be true, regardless and without reference to contributory negligence of deceased or Mrs. Sallie Pearson."

We do not think this criticism well taken. It is true that the jury are told, in each of the paragraphs complained of, to find for the plaintiff if they find defendant guilty of negligence on the issue submitted, and that such negligence was the proximate cause of the injuries, but these paragraphs are immediately followed by paragraphs 18 and 19, fully limiting the effect of these charges, and instructing the jury not to find for plaintiff if

appellant was not guilty of negligence as charged, and, further, not to find for plaintiff if she and her husband were guilty of contributory negligence. Construed as a whole, as against this criticism, the issue of contributory negligence was fairly submitted to the jury. Railway Co. v. Morrison, 46 Tex. Civ. App. 186, 102 S. W. 145; Railway Co. v. Stewart, 57 Tex. 170; Railway Co. v. Smith, 65 Tex. 170; Railway Co. v. McClain, 80 Tex. 98, 15 S. W. 789; Railway Co. v. Graham, 168 S. W. 60. This disposes of the fourth, fifth, sixth, seventh, and eighth assignments of error.

[2, 3] In submitting the issue of discovered peril, the jury were told that it was the duty of the engineer and fireman to use all reasonable means at their command, consistent with the safety of the train, crew and passengers, to avoid injuring the plaintiff, etc. Under the ninth assignment, appellant questions this charge, advancing this proposition:

"Where a person is discovered in a perilous position, the operatives of a train are only required to use ordinary care in the use of the means at hand, consistent with the safety of the train, its crew, and passengers, to avoid injury to said persons."

Unquestionably, this proposition states a correct principle of law. Railway Co. v. McMillan, 100 Tex. 562, 102 S. W. 103; Railway Co. v. Ervin, 212 S. W. 234; Railway Co. v. McGill, 202 S. W. 338. But does the charge given by the court require of the defendant anything more than the use of ordinary care? We do not think so.

In discussing a charge wherein the jury were told that the defendant was liable if the conductor failed to use "all reasonable effort at his command to avoid the injury," in Railway Co. v. Bowen, 95 Tex. 364, 67 S. W. 408, Justice Brown, speaking for the Supreme Court, said:

"The charge did not place upon the defendant any greater burden than is prescribed by law, for the jury undoubtedly understood from the use of the language, 'reasonable effort,' that the law required the conductor to make such exertion to prevent the injury as a reasonably prudent man would under like circumstances. We are of opinion that the charge would not have been more favorable to the defendant if the qualification that it desired had been added, for it is manifest that any man of ordinary prudence would, under like conditions, use all 'reasonable efforts at his command' to save the life of a fellow man."

The only difference between the charge in the Bowen Case and the charge in this case is the use in this case of the word "means" instead of the word "efforts."

In Railway Co. v. Breadow, 90 Tex. 26, 36 S. W. 410, Justice Denman said:

"If defendant, through the parties in charge of the engine, knew Breadow's peril in time to have avoided same, such knowledge imposed upon it the new duty of using every means then within its power, consistent with the safety of the engine, to avoid running him down, and a failure to do so would render it liable."

A charge in almost identical terms with the charge in this case was given in Railway Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 445. The word "means" has been used so often by our appellate courts in discussing the duty of the operatives of a train on this issue, that we do not feel authorized to draw a distinction between the two words, "means" and "efforts," and reverse this case on this assignment.

Appellant requested the trial court to give special charges, requesting the jury not to predicate a finding of negligence on the failure to ring the bell or to maintain a flagman, gates, or bells, or other safety device, at the crossing in question, on the ground that the facts did not raise these issues. The failure to give these charges is the basis of the tenth and eleventh assignments of error.

[4] On the issue of failure to ring the bell, W. P. Skinner, who was driving the automobile, testified that he was approaching the crossing from the east, and was looking west for a train; that a large signboard was immediately in front of him; that the curve was sharp, the track was slightly elevated, and that he had to give close attention to his driving to keep from killing his engine, and that he was listening for a train from the east; that he was familiar with the law that required signals to be given; and that the whistle did not blow, and that the bell did not ring. He said:

"As I approached the railroad track going westward toward Houston, just before I reached this railroad crossing, I did not hear any signal from the engine by way of bell or whistle. When we were 100 or 200 yards east from the crossing, I did not hear any signals from the engine that later struck my car by bell or whistle. After I got clear of the signboard and taken the curve safely, of course, after I had convinced myself that there was nothing on the side west towards Houston, of course, then I looked back this way, but I just felt there was nothing back this way. I just looked. There had been no whistle blown, and had been no bell rung."

The appellee testified:

"If that whistle had blown, say, when it was within 100 yards of the crossing, I could have heard it. Considering how near I was to the track and the noise the automobile was making, if the engine had blown, say, 200 yards from crossing, I could have heard it. If the bell on that engine had commenced to ring, say, 1,000 feet before it reached the crossing, I could have heard it. As we went along in the car along the track I looked back several times; just noticed all along; always do it when I am in a car with anybody. If I am anywheres close to a railroad, I am always looking out for trains. I could not tell the exact number of times I looked back as we were traveling along there. I looked back several times; I couldn't give

the exact number, five or six. At none of those times did I hear any bell or whistle sounded from that train. * * * If the train had blown a whistle as far back as 300 or 400 feet from that crossing, there was not noise about the car in which we were riding which would have kept us from hearing. I could have heard the whistle that far away, or that near the crossing. * * * As to whether I undertake to say absolutely that this whistle was not blown and the bell was not rung, or whether I simply mean if it was rung and blown that I did not hear it, I say it was not."

This is not negative testimony, but is positive and direct, that the bell did not ring, and that the whistle did not blow. The testimony of these two witnesses clearly raises this issue.

[5] The issue of negligence predicated on the failure to maintain a flagman, bells, or gates at this crossing, is a question of more difficulty. The rule is thus stated in 33 Cyc. 943:

"Before a jury will be warranted in saying * * * that a railway company should keep a flagman or gates at a crossing, it must be shown that such crossing is more than ordinarily hazardous, as, for instance, that it is in a thickly populated town or city; that the view of the track is obstructed, either by the company itself, or by other objects proper in themselves, or that the crossing is a much-traveled one, and the noise of approaching trains is rendered indistinct, and the ordinary signals difficult to be heard, by reason of bustle and confusion incident to railroad or other business, or by reason of some other such cause."

Without reviewing the testimony on this point, it is sufficient to say that Englewood crossing was, under the strictest construction of the rule, "much traveled" by the public. It was about 3 miles east of Houston, a city with a population of something like 150,000, practically the only crossing for a distance of 20 miles. About 12 passenger trains and equally as many freight trains passed this point daily. It was within the yard limits out of Houston. As one approached the crossing from the east, the dirt road ran parallel with the railroad about 50 feet distant. At this point it made a sharp right-angle turn, crossed the track, made another sharp right-angle turn, then ran west toward Houston parallel with the track, and about 50 feet distant. The right of way was about 100 feet wide; the railroad track being near the center. At the crossing the track is slightly elevated. A large signboard about 10 feet high and 29 feet long had been placed on the east side of the track, just at the turn in the public road, facing those approaching the crossing from the east. At the time of this accident, this board had been there two or three years. The board so obstructed the view of one approaching the crossing from the east that a train coming from the west would be within about 600 feet of the crossing before it could be seen at the time of making the turn to cross the railroad track. This curve is so sharp that it was necessary to reduce the speed of automobiles to 8 or 10 miles an hour in order to make the crossing safely. Skinner testified that he was looking towards the west for a train just as he made this turn, had reduced his speed to about 9 miles an hour, and because of the sharp curve on the other side of the track and the elevated condition of the track he had to give close attention to his driving in order to avoid killing his engine, and that he listened for a train from the east. As soon as he got a view of the track west of the crossing, he looked to the east, and was in immediate collision with the train. He must have been in 40 or 50 feet of the track before he passed the north end of the signboard. Now, if this board so obstructed the view of a train coming from the west, and if the curve in the road and the incline as he approached the track held his attention to his driving, so that in the exercise of ordinary care he did not see the train coming from the east in time to avoid the accident, then, in view of the immense amount of travel over this crossing, it seems to us the issue of negligence in the respect complained of was fairly raised. Railway Co. v. Magee, 92 Tex. 616, 50 S. W. 1013; Railway Co. v. Gibson, 83 S. W. 865; Railway Co. v. Walker, 171 S. W. 265; Railway Co. v. Moore, 107 S. W. 660; Railway Co. v. Waits, 164 S. W. 873; Railway Co. v. Wiggins, 161 S. W. 448; Railway Co. v. Harrington, 209 S. W. 685.

[6-9] Above, we give the court's charge on contributory negligence. Appellant excepted to its submission "for the reason that said instruction is not sufficiently full, and does not apply the law of the case to the facts as raised by the evidence." This exception is made the basis of the first assignment of error. In connection with this exception, the appellant presented and requested the court to give the two following charges:

"If you believe that on the occasion in question plaintiff, Mrs. Sallie Pearson, could have ascertained the approach of defendant's train to said crossing in time to have avoided the accident by listening for the approach of said train, and if you further believe from the evidence that she did not listen, or by looking for said train, and you further believe that she did not look, or by both looking and listening, if you believe that she did not so look and listen, and that in failing to so look and listen, if she did so fail, she failed to use that degree of care that an ordinarily prudent person would have used under the same or similar circumstances, then you will render a verdict in favor of the defendant, unless you find for plaintiff on the issue of discovered peril.

"If you believe that on the occasion in question the defendant, J. M. Pearson, could have ascertained the approach of defendant's train to said crossing in time to have avoided the accident, by listening for said train, and if you

further believe from the evidence that he did not listen, or by looking for said train, and you further believe that he did not look, or by both looking and listening, and you further believe from the evidence that he did not look and listen, and that in failing to so look and listen, if he did so fail, he failed to use that degree of care that an ordinarily prudent person would have used under the same or similar circumstances, then you will find for the defendant on account of the death of J. M. Pearson, unless you find for the plaintiff on the issue of discovered peril."

These charges, being refused, constitute the basis of the second and third assignments of error. Under the tenth and eleventh assignments just above discussed, we have described the physical condition of the dirt road on both sides of the crossing, and the condition of the crossing; also we made a sufficient quotation from the testimony of Mr. Skinner and Mrs. Pearson to show the degree of care used by them in approaching this crossing. Appellant does not question the fact that the testimony is ,sufficient to sustain a finding relieving Pearson and his wife of the charge of contributory negligence. Appellee does not question the fact that this record raises against her and her deceased husband the issue of contributory negligence, nor does she challenge the nineteenth paragraph of the court's charge submitting the issue of contributory negligence.

These charges do not take from the jury the issue of negligence on the part of plaintiff and her deceased husband. This issue is fairly submitted. It is the settled law of this state that the defendant is entitled to have the facts constituting his defense grouped, and "pointedly and affirmatively" submitted to the jury. Railway Co. v. Lynch, 208 S. W. 721; Railway Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058. No criticism is made of these charges on either of these points. As we understand appellee, her only criticism is that they "took away from the jury the question of deciding that such negligence, if found, proximately contributed to the injury of plaintiff." In railroad crossing accident cases, it is not our understanding of the law that any such issue should be submitted to the jury. As said by Judge Williams in Railway Co. v. Edwards, 100 Tex. 22, 93 S. W. 106:

"While persons using a railway crossing have the right to expect that the law requiring signals will be obeyed, this is not a substitute for the duty of exercising care for themselves, and they are not excused from that duty by the fault of the other party. No case in this court has allowed a recovery upon facts such as these, and the judgment cannot be permitted to stand without abolishing the rule, recognized by all authority, requiring the exercise of ordinary prudence on the part of persons crossing railroad tracks."

These charges do submit to the jury the issue of ordinary care on the part of plain-

tiff. They do more—the jury is further required to find that she could have ascertained the approach of the train in time to avoid the injury. Now, if she could have reasonably anticipated the result of her negligence, then as a matter of law, such negligence was the proximate cause of her injury. Wells Fargo & Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513; Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162. On this question, how could an issue of fact arise? A railroad crossing is a place of such obvious, inherent danger, can it be questioned that plaintiff, as a matter of law, must be held to anticipate the result of her negligence in attempting to cross in front of a mighty passenger train, racing at a speed of 45 or 50 miles an hour? The heartbreaking result of this collision, as pictured on the pages of this record, is only the recurring history of such accidents. Such was the result yesterday, such is the result to-day, and such will be the result as long as frail man negligently measures his puny strength against the mighty forces of a fast-moving passenger train. This result is the common knowledge of all the people. And the result of such negligence is so uniform that no issue can arise against the fact that it should have been reasonably anticipated by her. We do not construe Railway Co. v. Rogers, 91 Tex. 52, 40 S. W. 959, as modifying the clear announcement of the law made in the Edwards Case. The charge criticized in the Rogers Case is clearly distinguishable from the charges requested in this case. In the first place, Judge Brown said:

"It does not submit to the jury the question whether a failure to look or listen, under the facts stated, constituted negligence on the part of plaintiff."

These charges are not subject to this criticism. Again, Judge Brown said:

"Nor does it require the jury to find that such negligence contributed to the injuries received by plaintiff."

In view of the rule recognized in the Edwards Case, this last statement by Judge Brown could only mean that the issue as to whether plaintiff could have ascertained the approach of the train in time to avoid the injuries was not submitted to the jury. The failure to exercise ordinary care cannot be the proximate cause of an injury, unless the exercise of ordinary care would have prevented the injury. These charges are not subject to this criticism.

The court's charge on contributory negligence was subject to the criticism made. These requested charges grouped facts, the affirmative of which made the plaintiff guilty of contributory negligence, and the trial court committed reversible error in refusing them. In T. & N. O. Ry. Co. v. Harrington, 209 S. W. 685, we had this identical question before us, discussed under appellant's ninth

assignment of error. We there held that the refusal of this charge was reversible error. Against that holding, the Supreme Court granted a writ of error, saying:

"We are of the view that the decision of the Court of Civil Appeals on the question as to giving of the special charges asked by the railroad company is erroneous."

Relying on this action of the Supreme Court, counsel for appellee in his original brief did not submit a close argument on his proposition that the refusal of these charges was not error. After the submission, however, we requested him to submit such an argument, and he will permit us to say that the argument he has filed ably and exhaustively discusses the issue. We have read this argument with the greatest care, and have also reviewed, to the best of our ability, our decision in the Harrington Case. Until the Supreme Court finally decides this issue adversely to our holding, we are unable to reach any other conclusion than the one therein expressed.

Of course, there is this distinction: This case was submitted on a general charge, and the Harrington Case was submitted on special issues, but in our humble judgment this is a distinction in fact and not in law. As said by this court in Railway Co. v. Lynch, supra,

"We are of opinion, however, that, whether a case be submitted on a general charge or on special issues, a defendant would be entitled to have any group of facts properly pleaded and supported by the evidence, which it might be claimed constituted a defense to the action, pointedly and affirmatively submitted to the jury for their finding."

In the Harrington Case we reannounce this proposition, both in the original opinion and on rehearing. This right, conceded to a litigant under a general charge, is equally valuable to him on special issues. To deprive him of this principle of law on a trial under special issues cuts deep into his substantive rights—a result, in our judgment, not anticipated by the Legislature when they placed it within the power of his adversary to require the submission of his cause on special issues. We believe it fair to appellee, as well as to ourselves, to say that we are reversing this case, not because of a distinction between this case and the Harrington Case, but because we believe that our disposition of this issue is correct, recognizing no distinction between the two cases.

For the error discussed, this cause is reversed and remanded for a new trial.

HIGHTOWER, C. J., concurs.

### On Rehearing.

We have given appellee's motion for rehearing careful consideration, and have examined all authorities cited. We believe our construction of the refused special charge is sustained by an unbroken line of decisions from the Edwards Case, discussed in our original opinion, to the granting of writ of error in the Harrington Case, also discussed in our original opinion.

In the recent case of Southern Traction Co. v. Kirksey, 222 S. W. 702, Judge Jenkins, discussing a charge similar to the one refused in this case, said:

"The cases above cited announce the doctrine that the failure of one about to enter upon a railroad track to look and listen is negligence as a matter of law. It may now be regarded as the settled law of this state that such failure will not of itself amount to negligence as a matter of law, but if the jury should find that such failure was negligence on the part of the person injured, and that such negligence was a proximate cause of the injury, there will be no right of recovery, and the jury should be so instructed. *It is true that requested charge did not submit the issue of proximate cause, but, under the undisputed evidence, if the deceased was guilty of negligence in driving his automobile against appellant's car, there could be no question but that such negligence was a proximate cause of his death.*" (Italics ours.)

It seems to us that this authority is directly in point, and sustains us in our conclusions.

The motion for rehearing is in all things overruled.