THE TEXAS & PACIFIC RAILWAY COMPANY V. WILLIAM FULLER
AND WIFE.

No. 93.

**Contributory Negligence.**—Mrs. Fuller, while attempting to cross the track of the railway company at a crossing used by the public, was struck by an engine of appellant and injured. *Held*, even if the railway company was guilty of negligence in failing to give the proper signals, and in running at a greater rate of speed than was allowed by law, yet if Mrs. Fuller attempted to step upon the track at a place where she could have seen the engine in time to have avoided the danger by looking, and failed to do so, she was guilty of contributory negligence, and can not recover. She not only failed to "look to the right or left" upon approaching the track, but had her head covered with a nubia, which practically deprived her of the power to hear the approaching engine. The refusal of the court below to grant a new trial was error.

APPEAL from Dallas. Tried below before Hon. CHARLES FRED TUCKER.

*Alexander, Clark & Hall, R. S. Lovett* and *T. J. Freeman*, for appellant.—1. It is the duty of a person about to cross a railway track to exercise ordinary care and prudence to ascertain whether cars are approaching or not, and to avoid danger; and the failure to exercise such ordinary care and prudence will be such negligence as will prevent a recovery for damages sustained. When there was nothing to prevent one about to cross a railway track from seeing his danger from an approaching car, and such person heedlessly steps upon the track in front of the moving car, and is injured, no cause of action arises from such injury. Railway v. Moss, 4 Texas Civ. App., 318; Railway v. Dean, 76 Texas, 73; Railway v. York, 44 Texas, 364; Railway v. Bracken, 59 Texas, 73; Railway v. Garcia, 75 Texas, 583; Murray v. Railway, 73 Texas, 2.

2. Under the charge in question, the persons operating the train, if they saw appellee on or about to step upon the track, or could have seen her by the use of ordinary care, were required to exercise the highest degree of care possible, i. e., to stop the engine if it could have been stopped, or to warn her of the approach of the engine by blowing its whistle or ringing its bell, or by some other means in their power, etc., while the law only required the exercise of ordinary care. Railway v. Smith, 77 Texas, 179; Railway v. Smith, 52 Texas, 178; Railway v. McDonald, 75 Texas, 41.

*R. H. Capers, C. A. Culberson* and *John Bookhout*, for appellees.

1. When a train is moving in a town, it is the duty of the agent of the railway company, before starting the train across a street, not only to give timely warning of their intention to start, but to look ahead and see that the train is not likely to hurt persons who are passing. Railway v. Lowry, 61 Texas, 150; Railway v. Sympkins, 54 Texas, 615; Railway v. Lee, 70 Texas, 496; Railway v. Weisen, 65 Texas, 443; Railway v. Chapman, 57 Texas, 75; Railway v. Ormond, 64 Texas, 485; Railway v. Walker, 70 Texas, 126.

2. The question as to whether or not the agents of the appellant company failed to ring the bell or blow the whistle previous to the injury, and also as to whether or not the crossing where the injury occurred was a public crossing, and whether Mrs. Fuller was guilty of contributory negligence, are matters of fact to be submitted to the jury, and if their finding is supported by the evidence, the court will not disturb their verdict. Railway v. Lee, 70 Texas, 496; Railway v. Gasscamp, 69 Texas, 545; Railway v. Murphy, 46 Texas, 356; Hanlon v. Railway, 16 S. W. Rep., 233; Railway v. Mahula, 1 Texas Civil App., 182; Blaiser v. Railway, 17 N. E. Rep., 692; Railway v. Weisen, 65 Texas, 443.

Upon appellees' motion for a rehearing, they submitted:

1. Neither this nor the lower court, in this case, can assume as a matter of law that the fact as testified by Mrs. Fuller was such negligence as will exclude a recovery; that it is only in cases where the facts are undisputed, or all one way, which shows contributory negligence, and that this was the sole cause of the injury, that it becomes a question of law; that unless an act or a combination of acts are declared by statute to be negligence, it is a matter exclusively within the province of the jury.

2. This case shows a combination of facts which present the issue as to whether the injury was the cause or resulted from the negligence of appellant, or from the contributory negligence of Mrs. Fuller. The jury found that under the facts she was not negligent, and their finding should not be set aside. Brown v. Griffin, 71 Texas, 654; Railway v. Hill, 71 Texas, 451; Railway v. Eckford, 71 Texas, 274; Railway v. Lee, 70 Texas, 496; Railway v. Walker, 70 Texas, 126; Railway v. Ormond, 64 Texas, 485; Railway v. Gasscamp, 69 Texas, 545; Railway v. Weisen, 65 Texas, 443; Railway v. Chapman, 57 Texas, 75; Railway v. Walker, 57 Texas, 332; Railway v. Murphy, 46 Texas, 356.

LIGHTFOOT, CHIEF JUSTICE.—The following statement of the case is substantially correct:

On January 15, 1889, Mrs. Sarah Fuller, wife of William Fuller, while about to step upon the track of the Texas & Pacific Railway Company in the city of East Dallas, was struck by an engine running upon said road, and her arm broken and her body bruised. February 2, 1890, said William Fuller and his wife, Sarah Fuller, instituted this suit against the

Texas & Pacific Railway Company for the sum of $20,000 actual and $10,000 exemplary damages for the personal injuries alleged to have been sustained by Mrs. Fuller, as above stated. The Texas & Pacific Railway Company, appellant, answered by general and special exceptions, general denial, and plea of contributory negligence. On May 23, 1891, there was a trial by jury, and verdict and judgment for appellees for the sum of $5500. Motion for new trial was made and overruled. In due time supersedeas bond and assignments of error were filed, and the cause brought to this court on appeal.

The following is a substantial statement of the testimony showing the manner in which the injury occurred:

Plaintiff Mrs. Fuller testified on direct examination: "I had just got to the railway track. The last thing I remember I was going to step upon the track. I do not think I stepped on the track. If I did, I was knocked unconscious about the time I did it. I do not think I even put my foot onto the rail. If I did, I do not remember it. Just being on it there was the last thing I remember until I woke up and found myself in bed at home. I did not see this engine. I did not hear any bell ring or any whistle blow. I did not have my bonnet on. I had a light kind of a nubia on, close around my head. I think the wind was from the north that day. When I was about to cross the railway track I was going in a northerly direction. The railway runs east and west. I suppose the engine was going in a westerly direction. I think this because I was going in that direction; because if it had been coming facing me, I could not have failed to see it. The engine must have struck me in the side, because this right side is where I was struck, and that is the side that was next to the railway when I was turning in that direction."

Cross-examined: "I did not walk on the railroad track, but when I walked on these planks to the railroad I went to turn to the left, and my face was turned to the city, and I was going to step on the ends of the ties of the Texas & Pacific Railway track. * * * I was turned, and was going to cross right where the railroad track and street car tracks cross each other, and I just made a turn that way, and that was the last thing I ever knew. I was going to step on the Texas & Pacific track, but did not step on it. I was right at the place where the street car crossed. This was a white nubia, and one of those long-necked things that ladies frequently wear. It was not freezing cold that day, but still it was somewhat cold and chilly, and there was a little north wind blowing. This nubia would come down below my waist, and was a yard and a half or two yards long and a foot or a foot and a half wide. I had the nubia over my head, and it came around the side of my face, and I had it clasped in my breast with this hand. The nubia covered my ears. I lived at that place two months. I can not say that I knew about the time the trains passed. I did not give any thought of it. That was out of

my line of business.   I can see and hear the cars passing up and down the road, but I did not take notice of all these things.   I was living about a block from the track of the Texas & Pacific road.   *   *   *   The sun was shining that evening, and the accident occurred just before the setting of the sun, but I do not know the exact hour.   *   *   *   Standing where I was hurt, I could see a half-mile if I would just turn and look, but I did not hear any noise, bell ringing, or signal of any kind to make me look, and I did not give it a thought; and as I did not have any warning, I just went on and did not think of looking.   I would not have looked unless there was some warning given.   I was just going along there attending to my business, and I did not look in any direction.   I did not look to the right or left.   I am sure the whistle did not blow and am sure the bell did not ring, or I would have heard it.   I am sure of it.''   She said she had a nubia on her head, and it came down, and she had it clasped in her hand, and in the other hand she had her money. She said she did not hear any noise of a bell or any signal of any kind to make her look, and she did not have warning, and just went on.

Moses Woolsey, witness for plaintiffs, among other things, testified to the effect, that the view of the track was plain and unobstructed for a half-mile or more from the point where the accident occurred; that he saw the engine before it struck Mrs. Fuller; no bell was ringing or whistle blowing when it came in; the engine was running very fast; he spoke to his '' old lady'' about it when it passed; it seemed to them four or five minutes after it passed before the regular passenger train came in; the engine seemed to be running faster than the regular train.

H. B. Brown testified that he was in his store directly adjoining the track, and did not hear any bell ring or whistle blow.

Mrs. Brown testified: '' Mrs. Fuller walked across the street car line and then went on to the end of the ties of the Texas & Pacific Railroad.   My store was fronting the railroad, and she went right in the direction of the railroad from the store.   She had just stepped on the ends of the railroad ties at the time of the accident.   She walked a few steps on the street car track going to the railroad; she walked until she got to the street car line, and then a few steps on the street car line until she got to the Texas & Pacific road.   It is just a few steps from the place where she got to the street car line to the Texas & Pacific road.   *   *   *   She was going along like she was in a deep study.   She had a white shawl over her head.   She was looking down on the ground, like any other old lady would do that had troubles.   The wind was blowing right hard in her face from this way (north).   I do not think she was deaf, but the wind was blowing in her face and she had her head bundled up.   I do not suppose she could hear as well as you and I, as she was old.   Most anybody would have bundled up their head that cold day, and it did not look like she could hear well with her head bundled up.''

D. L. Fagan testified, that there was no bell ringing or whistle blowing; that the engine was going about twenty or thirty miles an hour as it passed.

J. W. Owen, a carpenter, residing near the scene of the accident, testified to the effect, that he met Mrs. Fuller going in the direction of the place of the accident a few minutes before it occurred, and he saw the engine soon thereafter approaching, and is positive that the whistle was blown for the Santa Fe crossing, and again at Jones' house, between the Santa Fe and the place of the accident, but is not sure; that from the place where the accident occurred the view is unobstructed for at least a half a mile in the direction from which the engine approached; that when he saw Mrs. Fuller she had some kind of a wrap on her head.

The witness S. P. Bird says: " That he lives in East Dallas; been in the railway business about fifteen years; for a long time was brakeman; am familiar with the movement of trains and the speed at which they run, when I see them, and usually watch their movements; saw the engine that struck Mrs. Fuller; it was a light engine, without any cars attached; only the engine with tender; had been walking on the Texas & Pacific track going east, and turned off the track to go up Smith Street; the engine was running at least twenty or twenty-five miles an hour; they did not ring the bell or blow the whistle; they blew for the Santa Fe crossing; I am certain of that, for I watched it closely, and Mr. Owen and I were talking of it at the time; the engine was running without cars attached; the crossing of the Santa Fe is 1410 feet from the place where Mrs. Fuller was said to be hit by the engine, and the engine was one-quarter of a mile beyond the Santa Fe crossing when it whistled for the Santa Fe crossing; Mrs. Fuller could not see the engine as it came west without turning around and looking in an opposite direction from the way she was going."

H. S. White, who was passing near the scene of the accident in a buggy, testified to the effect, that he was about fifty feet from Mrs. Fuller when she was struck, and saw her at the time; that he heard the whistle at the Santa Fe crossing, and then again when it was about half-way between the Santa Fe crossing and the scene of the accident; that the whistle was blown 500 or 600 feet from the place of the accident; it made two short blasts and then two long ones; this was after it had blown for the Santa Fe crossing; that Mrs. Fuller approached the track, and when near to it halted, and as the engine came along she stepped towards the track and the pilot of the engine struck her; that he thought she had something over her head, and he did not see her look either way.

Prof. D. A. Griffith, a teacher in Hill's Business College, testified for defendant, and stated, that he was about 100 yards from the place of the accident at the time it occurred, and witnessed it; that the noise of the engine and the bell ringing called his attention to the engine as it ap-

proached; that he is positive the bell was ringing; that he heard the bell as the engine came from behind him. He was walking on Pacific Avenue parallel with the railway. * * * That the engine bell was ringing continuously until it occurred.

J. H. Wilder, engineer in charge of the train, testified to the effect, that he was on the right side of the engine, and Mrs. Fuller was on the left; that he blew the whistle at the fair grounds for the Santa Fe crossing, came to a stop for the crossing, and whistled again, the signal being one long whistle for the crossing, and then two short whistles after stopping and before starting. He again blew the whistle between the Santa Fe crossing and where the accident occurred, giving four short, sharp blasts; these blasts were for the blind crossing around the curve, the curve commencing west of the place of the accident, the track being straight east thereof to and beyond the Santa Fe crossing, the direction from which the engine was approaching. The bell on the engine was ringing before the accident. The fireman commenced to ring the bell immediately after leaving the Santa Fe crossing; that he was positive about this, as he is also positive that he blew the whistle as just stated; that it was his duty to look out on the right hand side, and the fireman's to look out on the left hand side, as the smokestack and sandbox prevented him, to some extent, from seeing on the left hand side.

E. Valimont, fireman, testified: "In January, 1889, I was a fireman on a locomotive engine and was working for the Texas & Pacific Railway Company. I was firing on the engine with Mr. Wilder on the day Mrs. Fuller was struck by the engine in East Dallas. We came from Marshall that day, and were going to Fort Worth to bring out the pay car. We were running as first section of number 1, a regular passenger train; we were running on time card schedule; we were running on the time of number 1; we were to run right on time as number 1 was supposed to be, and make all the stations on schedule time. Number 1 was supposed to be five or ten minutes behind us. I think we left Marshall right on time, but do not remember now what the time of leaving there was then. The engine struck the woman up there between 6 and 7 o'clock in the evening. We made two whistles for the Santa Fe crossing and stopped, and then came on and made four short whistles for the road crossing up in town. These road crossings are west of the Santa Fe crossing. When the engine made the four short whistles it was between the Santa Fe crossing and the place where Mrs. Fuller was struck, and probably 200 feet from the place where she was struck when it blew. The bell was ringing at the time. We commenced ringing the bell at the Santa Fe crossing, and it was ringing all the time up to the time the engine struck Mrs. Fuller. I was ringing the bell myself, and am positive it was being rung. When I first saw Mrs. Fuller she was on the street car track. She got on it about the center of the dirt road, and when she was on the

street car track she was moving towards the Texas & Pacific track. She came walking along there, but stopped within about four feet of the track. We were two or three engine lengths from her when she stopped; she was walking slowly. When we got right near her she made two steps, and the side of the engine struck her. She stopped thirty seconds or a minute; no, not a minute either, because we were about three engine lengths from her when she stopped, or about sixty feet; and then she made two steps and stepped into the side of the engine. I hallooed to Mr. Wilder and told him he had struck a woman, and he told me to grab the red light and flag number 1. This engine could not have been stopped before striking Mrs. Fuller after we saw her."

Mrs. Bettie McKinzie, a witness for plaintiffs, testified: That she witnessed the accident. It happened at the crossing of the Texas & Pacific track and the street railway track, at the intersection of Pacific Avenue and another street. She saw the engine 75 or 100 yards before it reached the crossing; her attention was called to its rapid running, and there was no bell ringing or whistle blowing. Saw Mrs. Fuller approaching the track; does not know whether Mrs. Fuller saw the engine or not; she could have seen it if she had looked in that direction; that if she had looked down the track in the direction from which the engine was coming she could have seen it some distance; does not know how far it is from the place of the accident to the Santa Fe crossing, but one could see from that place to the crossing; that Mrs. Fuller was walking slowly, with her head down; had a white scarf on her head, and did not look toward the engine. She appeared to be in the act of crossing the track.

*Opinion.*—From the foregoing facts, it is manifest from Mrs. Fuller's own testimony that she attempted to cross the track of the railway company with her head covered by a nubia, and that she did not look to see whether there was any engine or train approaching or not. She was struck by an engine of appellant and seriously injured. She says: "I had the nubia over my head and it came round the side of my face, and I had it clasped in my breast with my hand. The nubia covered my ears. * * * Standing where I was hurt, I could see a half-mile, if I would just turn and look, but I did not hear any noise, bell ringing, or signal of any kind to make me look, and I did not give it a thought; and as I did not have any warning, I just went on and did not think of looking. I would not have looked unless there was some warning given. I was just going along there attending to my business, and I did not look in any direction. I did not look to the right or left." It was not controverted that the track was open, and if she had looked she could have seen the approaching engine for a long distance. One witness says: "She was going along like she was in a deep study. She had a white shawl

over her head.  She was looking down on the ground, like any other old lady would do that had troubles.''

The crossing was one used by the public in East Dallas, and there was testimony to the effect that the agents of the company in charge of the engine did not give the signals required by law, and the engine was running at an unusual rate of speed in the city limits.  The rule is well settled in this State, that even if the defendant was guilty of negligence in failing to give the proper signals and in running at a greater rate of speed than was allowed by law, yet if the plaintiff attempted to cross the track at a place where she could have seen the engine in time to have avoided the danger by looking, and failed to do so, she was guilty of contributory negligence and can not recover.  Railway v. Dean, 76 Texas, 73; Railway v. Bracken, 59 Texas, 73; Railway v. Garcia, 75 Texas, 583; Murray v. Railway, 73 Texas, 2; Railway v. Moss, 4 Texas Civ. App., 318.

The case is one which presents strongly every phase of the question of contributory negligence; and while, as a rule, we are averse to any disturbance of the verdict of a jury upon the facts, yet upon the vital question in this case there is no controversy.  *She did not look.*  Our court has held repeatedly, that a failure by a party attempting to cross a railroad track to use the precaution of looking to see whether a train is approaching is such contributory negligence as will prevent a recovery.  Here there was not only an actual failure to '' look to the right or left,'' but with her head covered with a nubia, she had practically deprived herself of the power to hear the approaching engine, and did not hear it until she was struck.

Under the rule adopted by our Supreme Court upon the question of contributory negligence, we feel constrained to reverse the judgment.

It is unnecessary to notice the other assignments of error; but for the refusal of the court below to grant a new trial, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 1, 1893.

Motion for rehearing overruled January 10, 1894.