## LOUISIANA WESTERN RY. CO. v. JONES et al. (No. 7944.)

(Court of Civil Appeals of Texas. Galveston. April 20, 1921. Rehearing Denied June 30, 1921.)

**1. Railroads ☞348(1)—Evidence held to show negligence.**

In an action for damages for death of automobilist at railroad crossing, ,evidence *held* sufficient to sustain finding of negligence on part of the defendant.

**2. Death ☞99(1)—$21,000 held not excessive.**

A verdict for $21,000 for the death of driver of motortruck was not so excessive as to authorize appellate court to conclude that it was the result of passion, prejudice, or any other improper motive.

**3. Railroads ☞328(11)—Motortruck driver held guilty of contributory negligence.**

In an action for death of motortruck driver at railroad crossing in the state of Louisiana, evidence *held* to show as a matter of law that deceased was guilty of contributory negligence, although deceased stopped, looked, and listened, but because of the rapidity with which the train was running, and the length of time it took to get his car started and get on the crossing, and the difficulty of seeing to the side of the car because of its closed top, he drove onto the track in front of the train without knowing of its approach.

Appeal from District Court, Harris County; .Ewing Boyd, Judge.

Suit by Mrs. Walter Jones and others against the Louisiana Western Railway Company and others. Judgment for plaintiffs, and defendant Railway Company appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood and Garrison, Polard, Morris & Berry; all of Houston, for appellant.

S. P. Jones, of Marshall, and Smith & Crawford, of Beaumont, for appellees.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

PLEASANTS, C. J. This is a suit by the widow, mother and minor son of Walter Jones, deceased, who sues by his mother as next friend, for damages from appellant for the death of Walter Jones which it is alleged was caused by the negligence of the appellant.

Walter Jones was killed by a train on appellant's road while attempting to cross the railroad track in a motor delivery car at a public crossing of said railroad in Arcadia parish, in the state of Louisiana. The negligence of the defendant, which it is alleged was the cause of the death of Walter Jones, is set out in the petition as follows:

"That the said Walter Jones was traveling in, or driving a car or automobile commonly known as a delivery truck, and that he approached and came upon the railway of said defendant at a point where the said public highway crossed the railway track, and that he was struck, injured, and killed by reason of the negligence of the said defendant railway company, in that the said railway company was at the said time causing one of its through passenger trains, commonly known as the 'Sunset Limited,' running from New Orleans, La., to Houston, Tex., to be run at a very high rate of speed, and that at the time the said Walter Jones, after the exercise of proper care, approached, and drove upon the said crossing, and before he could pass over the tracks of the said defendant, that the said train was carelessly and with great speed, and without sounding the whistle or ringing the bell, run upon him, striking the said automobile or delivery truck, turning the same over, and crushing and killing the said Walter Jones. That the road on which and from the direction which Walter Jones was traveling ran parallel with the track of the said railway for some distance and then curved abruptly toward the track, and that the said agents, servants, and employés of the said railway company, in approaching the said public crossing, gave no warning signal of any kind or character whatever, such as ringing the engine bell or blowing the whistle, to warn persons of the approach of said train, notwithstanding that the persons in charge of the train saw, or could have seen, that the said Walter Jones was approaching the said crossing, after he had exercised proper care for his safety, and notwithstanding that they knew, or should have known, the train was approaching said crossing at a high rate of speed, where people were in the habit of constantly using the same as public highway. That if the said persons in charge of the operation of said train had blown the whistle or rung the bell the said Walter Jones would have been thereby apprised of the approach of the said train, and could have avoided being struck and killed by the same.

"That plaintiffs show that it was exceedingly dangerous and negligent for the said train to have been run at such a high rate of speed as the train was being run when said Walter Jones was struck and killed while approaching and crossing a public road at grade crossing, such as the place where the said Walter Jones was struck and killed, and that it was negligent and dangerous for the said train to be caused to approach said crossing at so high a rate of speed without giving warning of its approach by ringing the bell or sounding the whistle in time to have apprised the said Walter Jones of the approach of the said train a sufficient time before it reached said crossing to have enabled him to avoid a collision with the said train, and that by reason of the said negligence of the said defendant railway company, its agents, servants, and employés in approaching the said crossing at so high a rate of speed, and without giving any warning by sounding the whistle or ringing the bell in approaching the same, that the said Walter Jones was run down, crushed, and killed."

The defendant, after pleading a general denial, specially pleaded as follows:

"And for further answer herein, defendant says that the accident which caused the death of plaintiff's husband and father did not occur in the state of Texas, but in the state of Louisiana; that the plaintiff's husband and the plaintiff were at that time citizens of the state of Louisiana, and that the plaintiffs now are resident citizens of Louisiana, and that this suit is controlled by the laws of Louisiana, and this defendant prays that this suit be tried in accordance with the law of the state of Louisiana, and not by the laws of Texas.

"This defendant would further show that by the law of Louisiana, on approaching a railroad grade crossing for the purpose of crossing the same, one is required to exercise ordinary care, and to stop, look, and listen before attempting to make such crossing, and that, on attempting to cross said railroad, is required to stop, look and listen at a place and under conditions where stopping, looking, and listening for the approach of a train would be effective in discovering the approach of a train in ascertaining whether or not said person could proceed and cross said track with safety to himself, and that this is especially true in reference to those who are driving or operating automobiles, and that said law of Louisiana requires that the driver of an automobile, in attempting to approach and cross a railroad crossing shall continue looking and listening for a train up until the time of the crossing of said track, and until it is ascertained with certainty that he can approach and cross said track with safety to himself, and that a failure to stop, look, and listen to discover the approach of a train in time to prevent injury or collision when the same could be ascertained by stopping, looking, and listening, or either, will constitute such contributory negligence upon the part of the driver of said car as to bar any right of action on the part of the driver of said car or those attempting to recover for his injuries in the event of his death.

"This defendant would further show that the death of the deceased, if caused either directly or indirectly by the negligence of the defendant or its agents, which is not admitted, but denied, was directly or proximately caused by the negligence of the deceased, which negligence on the part of the deceased is pleaded in defense of plaintiffs' cause of action, if any they ever had; that the negligence of the deceased consisted of this:

"That he was the driver of an automobile, and that he drove said automobile onto defendant's track directly in front of an ap-

proaching train, which could have been both seen and heard by him had he stopped, looked, and listened for the approach of a train, or otherwise exercised ordinary care, that the deceased did not stop and look and listen for a train at a place and under conditions where stopping, looking, and listening, or either of such means, would have been effective in discovering the approach of said train of defendant, and did not, by stopping, looking, and listening, or either, at a proper time and place, ascertain whether or not he could approach and cross said railroad with safety to himself, but approached said track and went onto said track with his said automobile without having stopped, looked, and listened for the approach of said train, at a time when by stopping, looking, and listening, or doing either, he could have ascertained in time to have prevented his injury whether or not a train was approaching said crossing: that had he stopped, looked, and listened as required by law he could and would have discovered the train in time to have avoided the train, and that his failure to so stop, look, and listen, or to do either, constituted contributory negligence on his part, which contributory negligence on the part of the deceased continued until the time or the moment of the accident, and that in so approaching said track, under the laws of Louisiana, his conduct amounted to and constituted contributory negligence on his part such as to bar plaintiffs' right of recovery herein, which contributory negligence is pleaded in defense of plaintiffs' cause of action, if any.

"That if there was any negligence on the part of the defendant, or of any of its agents, servants, and employés, which is not admitted, but denied, then defendant says that the negligence of the deceased in failing to stop, and to look, and to listen for a train at a place, under conditions that would have caused him to know of the approach of said train in time to have prevented his injury, was continuous up until the time of the accident, and his said negligence was concurrent with the negligence of the defendant, if any, such as to make inapplicable the law of the last clear chance or the law of discovered peril, as it applied by the law of Louisiana, which Louisiana law is pleaded herein."

A jury in the court below, in response to special issues submitted to them, found:

"(1) That the employés of the defendant, in approaching said crossing, did not blow the whistle of the locomotive for said crossing.

"(2) That the failure of the employés to blow the whistle was the direct and proximate cause of the death of Walter Jones.

"(3) That the employés of the defendant, in approaching said crossing, did not ring the bell of said locomotive for said crossing.

"(4) That the failure of the employés to ring the bell was a direct and proximate cause of the death of Walter Jones.

"(5) That the deceased, Walter Jones, as he approached and was in close proximity to the railroad track, stopped the automobile and looked and listened for the approach of a train.

"(6) That the said Walter Jones did not see or hear the train, nor could he, by the exercise of ordinary care, have seen or heard the train.

"(7) That the deceased, Walter Jones, used ordinary care in attempting to cross the railroad track to discover the approach of a train and to protect himself from injury from the same.

"(8) That the failure of the deceased, Walter Jones, to use ordinary care in attempting to cross the railroad track was not the direct and proximate cause of his death."

Damages were found by the jury in the sum of $21,000, $1,000 of which was apportioned to the mother, $6,000 to the widow, and $14,000 to the minor child of the deceased. The record discloses the following facts:

Walter Jones, while attempting to cross the railroad of appellant at a public road crossing between the towns of Crowley and Rayne in Arcadia parish, in the state of Louisiana, was killed in a collision between the motortruck in which he was riding and a passenger express train on appellant's railroad known as the "Sunset Limited," which runs from New Orleans, La., to Houston, Tex. At the time of the collision the train was going west, and was running at a speed of 45 or 50 miles an hour. The railroad track at the crossing and for a mile or more on either side runs practically due east and west. The public road from Rayne to Crowley runs on the south side of the railroad east of the crossing, and after crossing the railroad runs westward along the north side of the track. Walter Jones was traveling this road in a motor delivery truck, which had a top with its sides boarded up so that the side view of a person on the driving seat was obstructed, and in order for the driver to see any great distance at a right angle from the course he was traveling, he would have to get from behind the driving wheel and off the seat, or put his head around in front of the side of the top. The public road east of the crossing runs in the same general direction as the railroad, and near thereto. When it gets within about 100 feet of the crossing it turns northward and approaches the crossing at an angle of 64 degrees. After making this turn a traveler using this road and looking forward would see much further down the railroad track to the west than to the east. The road and crossing are in an open level prairie, with nothing to obstruct the view down the railroad track east or west for miles except a row of telegraph poles along the track and the cattle guards near the crossing. The railroad whistling post is 1,382 feet east of the crossing, and 2,900 feet east of the crossing there is a 3-degree curve in the track to the south. Jones, as before stated, was traveling the public road going west from Rayne to Crowley. He was driving slowly, making from 8 to 10 miles an hour. There is testimony that after he passed the point where the road turned to the north to cross

the railroad track, and when at or near the telegraph poles, which are about 50 feet from the track, he stopped his truck. The witness who gave this testimony was 250 yards south of the crossing, and did not know why Jones stopped, nor now long the stop lasted. His testimony on this issue is as follows:

"As to whether I saw the car come to a dead stop or slow down, will say—well, it looked like it slowed down. In fact, it stopped; I am positive it stopped. I didn't turn south until he was stopped; I was going west until he stopped, and at the very moment he stopped I then turned south. I am positive the car came to a dead stop; I was facing it, looking right at the back. I cannot look at the back end of a car and tell whether or not it is running just a mile an hour or stopped; very few men can do that; but you can stand off to the side, with the direction I was in, and tell whether it is moving or not. The back was not exactly to me; it puts me, just like I was over here (indicating) and the car was about in that way; it put me pretty near on the back of it. It did not impress on my mind then that the car stopped; as a matter of fact, I didn't know; I just thought maybe he stopped; for some reason or other I didn't pay any attention to it. I remember that he stopped; that is all. I should judge he might have stopped to look for the train, or might have stopped for gasoline, or his car might have gone dead; I don't know why he stopped. It impressed upon me the thought that the man stopped. I don't know how long he stopped; the moment he stopped I wheeled south. The moment I stopped I didn't hear the train."

Several other witnesses, some of whom were traveling the public road behind Jones, and another in a field some distance to the south of the railroad track, saw him as he drove along the road, and also saw the train approaching from the east, but none of them saw Jones after he made the turn in the road to go over the railroad, and none of them saw him stop his car. The fireman on the engine of the train that struck the car testified:

"Prior to the accident I saw the automobile; I seen him. At the time I saw it, he was just running along the road. Just before the accident happened, I didn't call the attention of the engineer to anything, or notify him to do anything, until we got within 150—100 or 150—feet of the crossing; when he made that turn he came within 15 or 20 feet of the track, and stuck his head out, and it appeared to me that he may not have been going to stop; he was going right along slow, not stopping. I yelled at the engineer; and he went right up on the track, and he applied the brake in emergency right away; and, of course, the crash came then. After he turned and started towards the track he never stopped the automobile at all. I should judge he was probably 15 feet from the track, just guessing at it, when I gave the alarm to the engineer. We were running, I should judge, about 45 or 50 miles an hour; we have 50-mile schedule on that train."

In deference to the verdict of the jury we will for the purpose of this opinion assume that Jones did stop his car for the purpose of looking and listening for the approach of a train after he had turned to go on the crossing, and when he was near the line of telegraph poles along the railroad track. One of plaintiff's witnesses who made a survey of the crossing testified:

"If a person was standing in the road going from Rayne to Crowley, within a distance of 25 to 100 feet from the railroad track, there is nothing to prevent him from seeing a train coming from Rayne, except possibly the pole line.

"It is a fact that a person standing in the road, at any time after it passed the line of the right of way of the railroad company, between 100 feet of the crossing and the crossing, could have looked in the direction of Rayne and have seen the approaching train coming. A person standing in the road would have to be within 40 or 50 feet of the track in order to get an unobstructed view of the track; in other words, to get clear and unobstructed view he would have to be inside the line of poles; however, at any point in the vicinity of the crossing a train could be seen by a person standing in the road for a distance of 3,600 feet or more."

This testimony is not contradicted. The following testimony of another of plaintiff's witnesses shows how far a train could have been seen by a person approaching the track in an automobile like the one Jones was using:

"If a person driving an automobile approaching the track at this crossing had stopped within 30 or 50 feet of the track, he could have seen the train coming from Rayne by putting his head out of the hood or cab or curtain, for a certain distance east; possibly as far as the whistling post. He could not have seen it further on account of the angle at which the car would be to the track. Looking towards Crowley he could have seen the train much further, because the car would be facing more towards Crowley. Nothing would have prevented him seeing the train as just stated except the angle at which the dirt road approached the railroad track, and this would have prevented him in that position from seeing a train approaching from the east more than 200 yards; also the noise of an automobile engine would prevent a man hearing the noise of the train as it approached the crossing, but would not keep him from hearing the whistle if blown, or the bell if rung."

Jones had been making delivery of goods out of Crowley for some time. He had often used this road, and was thoroughly familiar with the crossing and its surroundings. The train that struck him was a regular passenger train on appellant's road, and was running on schedule time. The evidence shows that the weather was dry and the road very dusty. There was a good breeze, and the dust made by Jones' car was being blown towards the railroad track.

[1, 2] The evidence is sufficient to sustain all of the findings of the jury upon the issues of appellant's negligence in the operation of the train, and the amount of damages found by the jury is not so excessive as to authorize this court to conclude that it was the result of passion, prejudice, or any improper motive.

It was shown upon the trial that the law of Louisiana, as interpreted by the Supreme Court of that state, requires a person approaching a railroad grade crossing before going upon the crossing to stop, look, and listen for an approaching train at a convenient and effectual place for that purpose, and a failure so to do is contributory negligence as a matter of law.

The trial court gave the jury the following instructions:

"The law in the state of Louisiana, at the time of the death of Walter Jones, required that the said Walter Jones, in approaching the crossing in question, and in attempting to cross the track at that point, should use ordinary care to discover the approach of a train, and to protect himself from injury, and it was his duty to stop, look, and listen for the approach of a train before attempting to enter upon the track of the defendant, and to exercise ordinary care in doing so, and his failure to do so would be contributory negligence."

That this is the law in the state of Louisiana as interpreted by an unbroken line of decisions of the Supreme Court of that state is conceded by counsel for appellees.

Under appropriate assignments of error the appellant assails the several findings of the jury acquitting the deceased, Walter Jones, of contributory negligence, and complains of the refusal of the court to instruct the jury to return a verdict in favor of the defendant on the ground that the undisputed evidence in the case shows that Walter Jones did not use ordinary care to ascertain the approach of the train before going upon the track, and that his failure to use such care was a proximate cause of his death.

Appellees' contention is that the evidence is sufficient to sustain the conclusion that at the time Jones stopped his car to look and listen the train was not near enough to be seen or heard, and because of the rapidity with which the train was running and the length of time it took Jones to get his car started and get on the crossing, and the difficulty of seeing to the side of the car because of its closed top, he drove on the track in front of the train without knowing of its approach.

If the collision occurred just in this way it cannot be held that Jones used ordinary care to discover the approach of the train. He was throughly familiar with the situation, knew how far he had looked down the track, knew that a fast train was likely to be approaching, and knew the difficulty in the way of looking to the side of his car. With a knowledge of these facts, we do not think ordinary minds can differ in the conclusion that he was not exercising ordinary care in driving on the crossing without making any further effort to discover whether a train was coming. The undisputed fact that the deceased in broad daylight drove upon a railroad track in the open prairie in front of a train of seven passenger cars with nothing along or near the track to obstruct the view of the approaching train prima facie forbids the conclusion that in so doing he was using ordinary care. Counsel for appellees admits this when he says in his brief:

"I readily admit that if the deceased had been walking, and had stopped, looked, and listened, and then had walked upon the track and been struck by the train, that he must have been held guilty of contributory negligence. I likewise admit that if he had been traveling in an open buggy or an open car that the same conclusion would be reached; but in this case we are confronted with an entirely different situation, and one that the appellant has consistently and persistently tried to ignore, namely, that the deceased was traveling in a vehicle that had been prepared to protect its occupants against the ravages of the storm and the rays of the sun; that he had a right to travel in that kind of vehicle; that the railroad company owed him the same duty to protect him from injury in that kind of vehicle as if he had been driving in an open car; that is, that it should have sounded the whistle and bell in approaching the crossing."

The circumstances cited by counsel as lessening the quantity of care required of deceased, under well-established principles of law required him to use more care. We copy from the case of Perrin v. New Orleans Terminal Co., 140 La. 818, 74 South. 160, the following portions of the opinion, which cites many of the authorities and clearly states the law of that state upon this question:

"It was the duty of the plaintiff, before crossing the track, to have stopped, looked, and listened; and, where it is shown that the view was unobstructed and the accident occurred in the daytime, it is clear that the train was in plain view of the plaintiff for a sufficient length of time before the accident to have allowed him to realize its presence, and to have avoided the danger.

"In the case of Tatum v. Rock Island, A. & L. R. Co., 124 La. 927, 50 South. 798, we say:

"'As the deceased could have avoided the accident by the exercise of the least degree of ordinary care, it is useless to inquire into the particular acts of negligence charged against the defendant, as none of them, if established, would affect the result.'

"And in Eyma Brown v. Railroad Co., 42 La. Ann. 355, 7 South. 684, 21 Am. St. Rep. 374, it is said:

"'No failure on the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing, upon'

approaching a railway crossing, and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty.'

"Even if the weeds had obstructed plaintiff's view, as he claims, his duty to stop, look, and listen was the more incumbent upon him. We say in Blackwell v. Railroad Co., 47 La. Ann. 270, 16 South. 819, 49 Am. St. Rep. 371:

" 'These obstructions, while they are not to be lost sight of in considering the question of responsibility, * * * should have suggested to travelers about crossing the tracks.'

"And in Barnhill v. Railway Co., 109 La. 43, 33 South. 63, we say:

" 'The greater the difficulty of seeing and hearing the train as he approaches the crossing, the greater caution the law imposes upon the traveler.

" 'The traveler, however, is rigidly required to do all that care and prudence would dictate to avoid injury, and the greater the danger the greater the care that must be exercised to avoid it, as where, because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings, or other obstructions and hindrances it is more·than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary.'

"And Mr. Wilkinson, in his work on Personal Injuries, in commenting on the case of N. Y. C. & H. R. R. Co. v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794, says:

" 'The looking and listening for an approaching train should be made at a time and in a place to make them most effective. It would be useless to look where the sight is obscured, or to listen where other greater noises drown the roar of the coming train. In other words, the precaution of the traveler should be reasonable, and by that is meant such precautions as a reasonable man would exercise in the ordinary affairs of life. Because of the fact that a collision between a train and automobile endangers not only those in the automobile, but also those on board the train, and also because the car·is more readily controlled than a horse vehicle, and can be left by the driver, if necessary, the law exacts from him a strict performance of the duty to stop, look, and listen before driving upon a railroad crossing where the view is obstructed, and to do so at a time and place where the stopping and looking and listening will be effective.' "

We cannot agree in the contention that because Jones stopped and made an ineffectual effort to discover the approaching train before he reached the crossing that he could thereafter proceed to go upon the track without using further care to ascertain whether a train was approaching. It seems to us that every dictate of prudence required him to continue to look out for a train while he was approaching the crossing, and if he had done this it is clear under the undisputed evidence in this case that he would not have been killed.

The holding of our Supreme Court in the case of Railway Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, is, we think, applicable to the facts of this case. In that case, the court, speaking through Justice Williams, says:

"The law is well settled that a driver approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence."

Further on in the opinion it is said:

"While persons using a railway crossing have the right to expect that the law requiring signals will be obeyed, this is not a substitute for the duty of exercising care for themselves, and they are not excused by the fault of the other party. No case in this court has allowed a recovery upon facts such as these, and the judgment cannot be permitted to stand without abolishing the rule, recognized by all authority, requiring the exercise of ordinary prudence on the part of persons crossing railroad tracks."

[3] The other cases in this state which we think sustain our conclusion that upon the undisputed evidence in this case the deceased must be held guilty of contributory negligence as a matter of law are Railway Co. v. Kutac, 72 Tex. 643, 11 S. W. 127; Railway Co. v. Dean, 76 Tex. 73, 13 S. W. 45; Railway Co. v. Fuller, 5 Tex. Civ. App. 660, 24 S. W. 1090; Railway Co. v. Hart, 178 S. W. 795; Railway Co. v. Paine, 188 S. W. 1033; Baker v. Collins, 199 S. W. 519.

It may be that the rule which denies any recovery for injuries which were contributed to by the failure of the injured person to use ordinary care should be modified and that the doctrine of comparative negligence is more equitable and just, but the rule is established by an unbroken line of decisions in this state, and it should not be frittered away by the courts by the approval of strained and unreasonable findings of facts by juries.

We shall not discuss any of the other assignments of error presented in appellant's brief. None of them, in our opinion, present any error which would require or authorize a reversal of the judgment.

We think the undisputed evidence shows that the deceased, Walter Jones, failed to use ordinary care in going upon the railroad crossing, and that such failure was the direct cause of this death. It follows from this conclusion that the judgment of the court below should be reversed, and judgment here rendered for the appellant, and it has been so ordered.

Reversed and rendered.

## On Motion to Correct Findings of Fact and for Rehearing.

At appellees' request we make the following corrections in the statement of facts con-

tained in our opinion heretofore filed in this case:

The statement that the train which struck and killed Walter Jones "was running on schedule time" is inaccurate and misleading. The train was running on schedule time in the sense that it was running at its usual or scheduled rate of speed at the time of the accident, but it did not reach the crossing at which the accident occurred at its usual or scheduled time of passing this crossing. The evidence shows that it was behind time, and there is testimony to sustain a finding that it was about one hour late. The fact that the evidence shows that the train was late was not called to our attention in appellees' brief, and we do not regard such fact as controlling or material. The contention of appellees in their motion for rehearing that, the train being late, the deceased Walter Jones could reasonably have presumed that it had passed the crossing before he reached it, and was therefore relieved of the duty of using ordinary care to discover the approach of the train before going upon the crossing, cannot be sustained.

The record shows that Jones, on the evening of the accident, had gone from Crowley, a station upon appellant's road several miles west of the crossing, to the town of Rayne, which is situated on the railroad a few miles east of the crossing, and was returning to Crowley when the accident occurred. The road from Crowley to Rayne over which he traveled in making this trip was along the railroad track, and if the train had been on time he could have seen it pass, and he could not have assumed when he went upon the crossing that it had not passed.

We have carefully considered the motion for rehearing, and feel constrained to adhere to the conclusion expressed in our original opinion that reasonable minds cannot differ in the conclusion that the undisputed evidence shows that if Jones had used ordinary care to discover the approach of the train before going upon the track he could not have failed to have seen it, and that his failure to use such care was the direct cause of his death. Such being our view of the evidence, the fact that the jury did not so view it cannot control our judgment. As said by this court in the case of Railway Co. v. Loeffler, 59 S. W. 562:

"We fully recognize the importance of a strict observance by the court of the rule that jurors are the exclusive judges of the credibility of witnesses, and of the weight to be given to their testimony, but this rule neither requires nor contemplates that the mind and conscience of the court shall be entirely and unreservedly surrendered to the judgment of a jury upon all questions of fact that may arise in the trial of a case. When the verdict of a jury is so against the weight and preponderance of the evidence as to be clearly wrong, it is the duty of the court to set such verdict aside; and the grave responsibility thus placed upon the judiciary of determining whether or not the evidence in a particular case is legally sufficient to deprive a citizen of his property cannot be evaded."

We are of opinion that the motion for rehearing should be overruled and it has been so ordered.

Overruled.