## TEXAS & N. O. R. CO. v. CORTEZ et ux.

### No. 9600.

Court of Civil Appeals of Texas. San Antonio.

June 5, 1935.

Rehearing Denied Aug. 21, 1935.

O. F. Burney, of Floresville, and J. Leonard Gotsdiner, of Houston, and Samuel Robinson, of San Antonio, for appellees.

SMITH, Chief Justice.

The railroad company's depot in the city of Floresville is a combination freight and passenger station, where freight is loaded and unloaded, and passengers taken on and discharged. The station is, therefore, the base of all passenger and freight switching movements. The main line may be said, for convenience, to run north and south, and the switch tracks lead out from, and then parallel, the main line in the vicinity of the depot. The main line runs along the west side of the station, and the house track on the opposite side. The house track is paralleled on the east by an adjacent open street.

At the time here involved, a regular freight train was scheduled to arrive at this station at 8:30, but usually did not arrive until around 10 o'clock, at night, and a regular passenger train was scheduled to arrive at 11:05. Fred Cortez, a local resident took his suppers at the home of one Lula Rodriguez, about a block distant from the depot, near which he passed daily in going to and from his meals. Being a young man, in a small town with only one railway station, it may well be assumed that he was at least in some degree familiar with the depot premises.

One night in April, 1933, Cortez's dead body was found, lying between the rails of the house track, in front of the entrance to the station baggage room. His parents brought this action against the railroad company for damages for the wrongful death of their son, and upon the trial recovered judgment for $4,000. The railroad company has brought this appeal from that judgment.

Appellees alleged, as stated in appellant's brief, that their son was killed by appellant's train "at a place commonly used by people for crossing the tracks of defendant in the town of Floresville, and that defendant was negligent in operating the train at the time and place, in that it dragged the deceased up the track and back the track, and that defendant did not have a look-out at the point, had no lights on the car that struck the deceased, and did not whistle or ring the bell to notify the deceased of the approaching train, all of which was claimed to be negligent."

Baker, Botts, Andrews & Wharton, of Houston, B. W. Teagarden, of San Antonio, and DeWitt Murray, of Floresville, for appellant.

In its answer appellant alleged, according to its brief, that the decedent's death "was caused or contributed to by his own negligence and lack of care at the time of his death; that he failed to look or listen, and paid no heed whatever to the moving train and cars, of whose presence he must have known; that he negligently placed himself in a position which a person of ordinary prudence and care would not have done, and that he paid no attention whatever toward looking out for his own safety, and that he failed to exercise any care whatever in being on the railroad track at the time in question, and that he was not looking or paying any heed to the movement of the train and to the noise thereof, or the warnings given by the trainmen, or to the presence of the trainmen and their lights, and that the train and its movement and all cars in question at said time were open to observation, and that their presence and movement were known to him, or would have been known to him in the exercise of ordinary care; that the negligence of the deceased caused or contributed to his death."

In answer to special issues the jury found:

1. That decedent was killed by "defendant's train, or box car," at a point where pedestrians commonly crossed the tracks, while said train was backing northwest on the house track.

2. That the train operatives negligently (a) failed to ring the engine bell, or (b) keep a proper look out, or (c) have a light at "said crossing," or (d) on or at the "northwest end of the box car on the northwest end" of the train.

3. That the decedent was not "underneath a railroad car" at the time "his body was first struck or dragged."

4. That the decedent negligently failed to (a) listen, or (b) "look out for and observe the train or cars."

5. That each of said negligent acts of the respective parties was a proximate cause of the decedent's death.

The trial judge gave effect to the jury findings of negligence of the railroad company, but rejected the findings of negligence of the decedent, and, notwithstanding those findings, rendered judgment against the railroad company for the amount of damages found by the jury, upon the ground that there was no evidence to support the finding that the decedent failed to listen or "look out for and observe" the car or cars, one of which was assumed to have struck him.

At the time the dead body was discovered, a small freight engine had been, for several minutes, and was still, switching cars in the vicinity, and in and out of the house track east of the depot, in order to substitute a loaded car, to be unloaded, for an empty, which was standing with two other cars at the station. The engine, being an old type, and small, was noisier in its movements than the newer, larger type. It had been, and was, busily chugging back and forth, in and out of the house track, noisily "working steam." The fire was "drumming" in the fire box; the exhaust was steaming from the cylinders; couplings were being made with the usual and familiar raspings and clangings. The trainmen, on and off the cars, manipulated the operations, signaling with their lighted electric lanterns, coupling, uncoupling, and recoupling the cars, doing the usual familiar things incident to such operations. Numerous persons in the vicinity at the time testified uniformly, for both appellant and appellees, that they heard and saw these movements. The decedent approached these movements from his boarding house, about a block distant. He was seen walking towards the switch tracks, which he could not reach except by crossing an open street, immediately along the other side of which the switching was done. The way to the tracks, then, was open and clear to him, free of all obstructions to his sight and hearing. When last seen alive he was walking towards these tracks, then within ninety feet of him, a few moments before his dead body was found on the track nearest to him. His movements in detail from then on were seen by no one who testified, and are therefore wholly unknown, so far as this record discloses.

The regular south-bound freight train, which was broken up for the switching operations in question, arrived at the station at about 10:50 that night, and headed in on an auxiliary track to let in the regular passenger train which was due at 11:05 o'clock. A loaded car in the freight train was to be taken out and spotted on the house track, then occupied by three other freight cars, one of them an empty, which was to be taken out. The engine, with a cut of five cars, pulled onto the main line, dropped two cars, backed in on the house track with three cars, made some couplings. The string of cars so assembled was taken out of the house track, cou-

pled onto the loaded car. The string was then taken back on the house track, and backed slowly, at the rate of four miles per hour, to spot the loaded car at the depot. It was in this movement that the dead body of young Cortez was discovered between the rails on the house track, opposite the entrance to the baggage room of the depot. It was perfectly obvious that the young man had lost his life when he crossed over the open street and into the adjacent switch track, where his body was found.

This way of crossing over appellant's tracks, at other than a public crossing, was habitually used by the public, constituting Cortez a licensee upon the premises. 35 Tex. Jur. p. 591, § 386.

The body of the deceased was first seen by a switchman, who, lighted lantern in hand, was riding the stirrup of the forward end of the slowly backing freight car. The switchman looking forward, saw the body lying between the rails, a few feet ahead. He first mistook the object for a sack; he thought it was probably a mail sack. Just before the moving car reached the body, the switchman, closely scanning the object, realized what it was, and, signaling, brought the car to a stop, after it had pushed the body a few feet along with the movement, without passing over it. The evidence disclosed that the body had been previously dragged, or rolled, along between the rails, for a distance of fifty or sixty feet. It had been so moved, in both directions, over part of that distance. From this mute evidence, it was made obvious that the body had been dragged in two train movements, before it was discovered by the brakeman, under the circumstances described. The cap and one of the shoes of the decedent were found about the center of the track, at a point about where the second pair of trucks of the empty car stood when the latter was first disturbed in the switching movements. A witness testified that the decedent must have been under that car when it was first moved. The space between the tracks was filled with dirt to the level of the rails, leaving a space of about six inches from the surface to the brake beams and other attachments on the car. The prone body of a person underneath a moving car would be pulled, rolled, mangled. The brakeman who made the coupling testified that Cortez was not knocked down by that train, because he was there all the time at the

forward end of the moving cars, and did not see Cortez until he discovered his dead body, in the manner stated. There was no indication that the wheels had passed over the body at any time. There was a pool of blood where the body was first discovered; blood was found on the flange of one wheel at the north end of the loaded car, which had been backed in with the second, or return movement, and along the tracks. The body appeared to have been dragged from a point near where the shoe and cap were found, to the point where the body was first discovered, and over part of that distance it was shown to have been dragged, or rolled, back and forth. There was blood along the inside of one of the rails. The undertaker who took charge of the body found that the neck was broken; the left jaw broken; the side of the body bruised "where it was dragged"; the left leg was broken, or crushed, from knee to ankle; there were bruises on the left side; a cut on the left knee. There were "no mashes" on the body, except upon the toes of the left foot, and the fingers of the left hand. The undertaker testified, further, that, in his opinion from long experience in his profession, the injuries to the broken leg and left knee were caused by the "drag"; that they were "mashed"; that the injuries and marks were caused from a "drag."

In passing upon the question of the negligence of the decedent, we may not look to, but must disregard, the jury findings of negligence upon the part of the railroad company. As a matter of law the jury findings against appellant, at least as to proximate cause, were without any foundation in the evidence [Texas & N. O. Ry. v. Warden (Tex. Com. App.) 78 S.W.(2d) 164], but as appellant did not complain of them below, or in this court, we are without jurisdiction to notice or rule upon them here. Speer's Law of Special Issues, §§ 532, 536; Blackmon v. Trail (Tex. Com. App.) 12 S.W.(2d) 967. We are, therefore, relegated to the ruling of the trial court in rejecting, and rendering judgment notwithstanding, the findings of contributory negligence upon the part of the decedent.

We have stated the evidence, every reasonable intendment of which must be resolved in favor of the jury findings thereon. Summarizing that evidence, so construed, it appears: That the decedent was familiar with the railroad premises

upon which he met his death, if not with the actual location, number, and purposes of the switch tracks; that he knew the engine was busily engaged in switching cars about those tracks, as it presumably did every night at that hour; that he heard the switching movements in and about the house tracks, saw the trainmen's lanterns flashing signals, saw the brakemen riding the forward end of moving cars; that he walked across the open street, into the switching zone, and onto the track upon which he was killed, and, possessing normal senses of sight and hearing, knew, or should have known, of the perils of the situation which, by the use of those senses and with the exercise of any reasonable degree of caution, he could have easily avoided; that, nevertheless, he got under, or between, or in front of the cars, and lost his life as a consequence. In support of its contention that the trial court erred in rendering judgment for appellees against the jury findings of contributory negligence, appellant relies upon the cases of Galveston, H. & S. A. Ry. v. Bracken, 59 Tex. 71, 73; Gulf, C. & S. F. Ry. v. York, 74 Tex. 364, 366, 12 S. W. 68; Texas & P. Ry. v. Fuller, 5 Tex. Civ. App. 660, 24 S. W. 1090; Gulf, C. & S. F. Ry. v. Moss, 4 Tex. Civ. App. 318, 23 S. W. 475. Those cases are not deemed in point, for in each of them eyewitnesses, including the injured parties themselves in the two cases last cited, testified in detail as to the actual circumstances of the accident, so that the jury could determine the issues from full, direct evidence; whereas, in this case, the jury were relegated to purely circumstantial evidence, aided by collateral facts directly proven, and resolved the issues by inferences from those circumstances.

■ Here, the jury found that the decedent negligently failed to listen, and keep "a proper lookout," for the cars, and that this negligence was the proximate cause of his death. As no witness in the case saw the accident, none could or did testify to the immediate circumstances thereof, and the jury were thereby relegated, for their findings, to evidence of collateral facts and circumstances preceding the accident. If those known collateral facts and circumstances were shown to be such as would naturally lead the mind to the conclusions expressed in the jury findings, then they were sufficient to sustain those findings. 17 Tex. Jur. p. 166, § 5, and authorities cited.

■ Here, the known facts, established by direct evidence to the satisfaction of the jury, were that the decedent, a mere licensee, with full knowledge of the perils of the situation, undertook to cross appellant's switch tracks at a place other than a public crossing, and where cars were then being switched in and out, and in doing so got between, or under, or in front of, the cars which ran over and killed him.

We conclude that the circumstantial evidence in this case, considered in connection with the established collateral facts, was sufficient to lead, in natural and probable sequence, to the ultimate conclusion that the decedent negligently failed to look out for and take reasonable precaution against the very accident which befell him, and the jury's finding upon the issue should have been given effect by the trial court.

■ In truth, our courts have repeatedly held in such cases that, where there was nothing to obstruct the view of the hazardous situation and no rebutting evidence, as in this case, the negligence of the deceased will be presumed, as a matter of law, so that he, if he survives, or his survivors, if he dies, may not recover damages as for his wrongful death. 35 Tex. Jur. pp. 551, 662, §§ 363, 421a, and authorities there cited; Texas Midland Ry. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137; Gulf, C. & S. F. Ry. v. Riordan (Tex. Civ. App.) 22 S. W. 519; Lumsden v. Ry., 31 Tex. Civ. App. 604, 73 S. W. 428; Houston & T. C. Ry. v. Kauffmann, 46 Tex. Civ. App. 72, 101 S. W. 817; International & G. N. Ry. v. De Ollos (Tex. Civ. App.) 76 S. W. 222; Houston & T. C. Ry. v. Tidwell (Tex. Civ. App.) 262 S. W. 810; Tucker v. Ry. (Tex. Civ. App.) 67 S. W. 914. In Gulf, C. & S. F. Ry. v. Riordan, supra, the essential facts were identical with the facts presented here, and in that case the Court of Civil Appeals reversed and rendered the trial court's judgment against the railway company. That case has not been overruled.

■ Appellees rely upon the familiar presumption that, in the absence of evidence to the contrary, a person, injured in an accident, exercised ordinary care for his protection, and did not voluntarily place himself in a position of peril, and that this presumption may be considered by a jury in passing upon the issue of contributory negligence. 35 Tex. Jur. pp. 511, 551, §§

337, 363; Missouri, K. & T. Ry. v. Luten (Tex. Com. App.) 228 S. W. 159.

But this presumption is rebuttable, and prevails only in the absence of rebutting evidence, and, moreover, is offset by the correlated presumption, in favor of the railroad company, that its employees also exercised due care to avoid the accident. Texas & P. Ry. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049.

Appellant urges numerous other propositions, but we conclude they are all without merit, and overrule them. But its first seven propositions, raising the question here decided, must be sustained.

Accordingly, it only remains for this court to render the judgment that should have been rendered below, to wit, that appellees take nothing by their suit, and that appellant go hence with its costs.

Reversed and rendered.

### On Motion for Rehearing.

In their motion for rehearing appellees have pointed out certain inaccuracies of fact appearing in the original opinion. Although deemed immaterial to the decision, those inaccuracies have been corrected in that opinion.

In testing the facts found against appellees, it must be remembered that all the evidence tending to support those findings must be taken as true; and, further, that the findings of negligence upon the part of appellant have no bearing upon the findings upon contributory negligence.

So, as there was evidence to support the implied findings (incident to the express findings of the negligence of the decedent) that the movements of the train at and about the point of the accident could be plainly seen and heard, that evidence must be taken as true, notwithstanding it may have been controverted by other testimony.

This court has not presumed, or inferred, any fact independently of the jury findings upon contributory negligence. The only presumption indulged by this court is the presumption in favor of the jury findings, there being some material evidence to support those findings. It is appellees, and not this court, who are attacking those findings. Appellees, in a very able argument on motion for rehearing, have assembled all the evidence upon the issue, and argue that that evidence did not convict the decedent of negligence; whereas, it was the exclusive province of the jury to weigh that

evidence, and give it effect, in accordance with their reason and judgment, under their oaths and the unchallenged instructions of the learned trial judge.

Appellees' motion will be overruled.